## SOUTH GARDINER LUMBER COMPANY

### *vs.*

### FREDERICK T. BRADSTREET, and others.

### Kennebec.   Opinion December 26, 1902.

*Contracts.   Sales.   Market Price.   Damages.   Non-Delivery.*

In the absence of a definite agreement, the market price of goods to be delivered is the price prevailing at the time and place of delivery; but if there is no market price at the place of delivery, the value of the goods should be determined at the nearest place where they have a market price by the addition or deduction of the difference in the cost of delivery.

Notice from the seller that he will not deliver the goods is no breach until the time of delivery is past.   Anticipated injury is not the ground of legal recovery.

The general rule of damages for the non-delivery of goods excludes the elements of profits and losses.

Where it appears that both parties understand that special circumstances existed, which would affect the subject matter of the contract, and reasonably contemplate the damages which would result from its breach, gains prevented thereby may be recovered as damages.   But the damages must be such as may fairly be supposed to have been in the contemplation of the parties at the time when they made the contract.

*Held;* that the facts before the court do not bring this case within the foregoing rule for special damages, and none are allowed.

By a contract between the parties, the defendants agreed to sell to the plaintiff corporation and to deliver to it at the Hallowell boom 6,000,000 feet of logs in the season of 1899, at the "market price."   The plaintiff agreed to pay and did pay $2.00 a thousand, or $12,000, March 15, 1899, in advance of delivery.   It was agreed that the plaintiff should be entitled to a discount of two per cent on the balance, if paid in cash at delivery.   The defendants delivered 1,043,490 feet of logs, and, unjustifiably refused to deliver the remainder.   The date of this breach of the contract was August 29, 1899, the day on which the Hallowell boom was closed.   In an action brought to recover damages for non-delivery of logs, to recover the balance of the $12,000 after payment for the logs delivered, and for special damages, *held;* that under the evidence, the contract price, which in the contract

was called the "market price," must be deemed to be the market price at the place of delivery in the "months of February and March," 1899. And as there were no sales of logs at Hallowell boom at that time so as to establish a market price, it is considered that, under the circumstances of this case, the market price of logs at Moosehead Lake dam, with the cost added of delivering them into the Hallowell boom, should be regarded as the contract price, being $10.90 a thousand. The value of the logs at Hallowell boom at the time when they should have been delivered was $11.50 a thousand. The difference between the contract price and the price at Hallowell boom at the time when the logs should have been delivered is the measure of damages for non-delivery. But to reduce both elements to the same cash basis, two per cent is deducted from the contract price less the $2.00 a thousand advanced, and also from the market price at time and place of delivery. Applying these principles, the damages, under the first count in plaintiff's writ, for non-delivery, amounted to $2716.17 to which interest is to be added from the date of the breach of contract.

The plaintiff advanced $12,000, March 15, 1899, as already stated. Of this sum $2087 was the advanced payment of $2.00 per thousand on the logs delivered. On the balance, interest is to be allowed from the date of payment until there was a delivery of logs. Against this balance with interest is to be credited the amount remaining due for logs delivered, less a deduction of two per cent for cash. The remainder is $965.18. And this sum, with interest from the date of the breach, is the amount the plaintiff is entitled to recover under the third count.

On report.  Judgment for plaintiff.

Special assumpsit for the failure to deliver logs sold according to agreement.  The writ contained three counts.  The plea was the general issue.  The case is stated in the opinion.

·*H. M. Heath* and *C. L. Andrews,* for plaintiff.

Counsel cited among other cases:  *Parsons* v. *Sutton,* 66 N. Y. 92; *Leigh* v. *Paterson,* 8 Taunt. 540; *Ripley* v. *McClure,* 4 Ex. 359; Benjamin on Sales, Vol. 2, 1118; *Stanford* v. *Magill,* (N. D.) 38 L. R. A. 760; *Hochster* v. *De La Tour,* 2 El. & Bl. 678; *Johnston* v. *Milling,* 16 Q. B. D. 460; *Brown* v. *Muller,* L. R. 7 Ex. 319; *Paul* v. *Meservey,* 58 Maine, 419, 421; *Lovelock* v. *Franklyn,* 8 Q. B. 371; *Curtis* v. *Blair,* 26 Miss. 309, 59 Am. Dec. 257; *Wells* v. *Smith,* 31 Am. Dec. 274; *Frost* v. *Knight,* L. R. 7 Ex. 111; *Equitable Gas Light Co.* v. *Baltimore Coal Tar Co.,* 65 Md. 73; Sedgwick on Damages, 742; Sutherland on Damages, Vol. 1, 113; *Smeed* v. *Foord,* 1 E. & E. 602, S. C. 102, E. C. L. 600; *Fletcher* v. *Tayleur,* 17 C. B. 21, S. C. 84 E. C. L. 20; Sedgwick on Damages, 8th Ed. Vol. 1,

558; *Borries* v. *Hutchinson*, 18 C. B. N. S. 445, 114 E. C. L. 443; *Halstead Lumber Co.* v. *Sutton*, 46 Kan. 192; *Culin* v. *Woodbury Glass Works*, 108 Pa. 220; *Vickery* v. *McCormick*, 117 Ind. 594; *Ramsey* v. *Tully*, 12 Ill. App. 463; *Loescher* v. *Deisterburg*, 26 Ill. App. 520; *Prettyman* v. *Railroad Co.*, 13 Ore. 341; *McKay* v. *Riley*, 65 Cal. 623; *Smith* v. *W. U. Tel. Co.*, 83 Ky. 104, 4 Am. St. Rep. 126; *Leonard* v. *The New York, Albany, and Buffalo Electro-Magnetic Tel. Co.*, 41 N. Y. 544, 566, 1 Am. Rep. 446; *Mississippi & R. R. Boom Co.* v. *Prince*, 34 Minn. 71; *Horne* v. *Midland Railway Company*, L. R. 3, C. P. 131, 42 L. J. C. P. 59, 28 L. T. 312, 21 W. R. 481; *France* v. *Gaudet*, L. R. 6 Q. B. 199, 40 L. J. Q. B. 121, 19 W. R. 622; *Elbinger Action-Gesellschaft* v. *Armstrong*, L. R. 9 Q. B. 473, 43 L. J. Q. B. 211; 30 L. T. 871, 23 W. R. 127; *Hinde* v. *Liddell*, L. R. 10 Q. B. 265, 44 L. J. Q. B. 105, 34 L. T. 449, 23 W. R. 650; *Grebert-Borgnis* v. *Nugent*, 15 Q. B. D. 85, 54 L. J. Q. B. 511; *Hammond* v. *Bussey*, 20 Q. B. D. 79, 57 L. J. Q. B. 58; *James* v. *Adams*, 8 W. Va. 568; *Wolcott* v. *Mount*, 36 N. J. L. 262, 13 Am. Rep. 438; *Cockburn* v. *Ashland Lumber Co.* 54 Wis. 619; *McHose* v. *Fulmer*, 73 Penn. 365; *Bank* v. *Montgomery*, 2 Casey, 143; *Richardson* v. *Chynoweth*, 26 Wis. 656; *Plummer* v. *Penobscot Lumbering Association*, 67 Maine, 363; *Louisville, etc., R. Co.* v. *Sumner*, 106 Ind. 55, 55 Am. Rep. 719; *Chicago, etc., R. Co.* v. *Ward*, 16 Ill. 522.

*O. D. Baker*, for defendants.

Counsel cited among other cases: *Blood* v. *Drummond*, 67 Maine, 478, 479; *Washington Ice Co.* v. *Webster*, 68 Maine, 449; *Thompson* v. *Smiley*, 50 Maine, 71; *McKenney* v. *Haines*, 63 Maine, 74; *Marsh* v. *McPherson*, 105 U S. 717; *Miller* v. *Mariner's Church*, 7 Maine, 51.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, JJ.

PEABODY, J. This is an action of assumpsit for breach of contract for the sale and delivery of mill logs. The original agreement, upon which the suit is based, is in writing and is as follows:

"This memorandum of agreement made this twenty-eighth day of February, A. D. 1895, by and between J. S. & F. T. Bradstreet, of Gardiner, Me., party of the first part, and the South Gardiner Lumber Company, of South Gardiner, Maine, party of the second part.

Witnesseth:—Said party of the first part hereby agrees to sell to said party of the second part, and said party of the second part agrees to buy of said party of the first part, at the market price during the four ensuing logging seasons, beginning with the season of 1895–6, from six to eight millions feet spruce mill logs each year; said party of the second part hereby agreeing to notify said party of the first part on or before September first of each year of the amount desired between the limits above specified.

Said party of the second part hereby further agrees to advance to said party of the first part, on or before the fifteenth of March of each year, beginning with March, 1896, toward the purchase price of said season's cut, the sum of two dollars ($2.00) per thousand feet on the estimated amount cut.

In case of the death of said F. T. Bradstreet, or the destruction of the mill owned by said party of the second part, or of other unavoidable accident, this agreement shall be void and of no effect.

Witness our hands the day the date first above mentioned.

J. S. & F. T. BRADSTREET,

SOUTH GARDINER LUMBER CO.

Charles Lawrence, President."

The negotiation was made in behalf of the plaintiff corporation by its president, Charles Lawrence, and in behalf of the defendant partnership by one of its members, Frederick T. Bradstreet.

It is conceded that, under this agreement, by the custom prevailing among lumber men on the Kennebec River, it would be understood that the logs were to be delivered over Moosehead Lake dam, at woods scale, and that the market price would be that ruling at the time and place of delivery.

This contract, however, was subsequently modified by a parol agreement, made by the same parties before any transactions under it com-

menced, by which the logs were to be delivered at re-scale in the Hallowell boom, and at market prices to be fixed in February and March of each year "when all the logs were being sold" or "in the early spring before the new logs came to market."

No controversy exists as to the place of delivery under the modified agreement; it was to be the Hallowell boom. But the parties are at issue upon the construction of the contract as to the time when the market value of the logs to be delivered in the year 1899 was to be determined.

The quantity to be furnished by the defendants during this season, in accordance with the notice of the plaintiff, was 6,000,000 feet; the quantity delivered was 1,043,490 feet, and the balance called for by the contract was 4,956,510 feet.

By the terms of the agreement, the plaintiff was to pay, in advance, on or before March 15th, in each year, two dollars a thousand on the quantity of logs designated by its previous notice; and at the request of the defendants the plaintiff, on the 15th day of March, 1899, paid on account of the logs to be delivered twelve thousand dollars. The claim for damages is set out in the plaintiff's writ in three counts:

1. The difference between the contract price of the logs and the market price at the place of delivery in the months of February and March.

2. Special damages for the loss of profits occasioned by breach of the contract.

3. Balance of $12,000, money advanced under the contract after payment for the logs delivered and interest.

The deliveries of logs made in the season of 1899 to the plaintiff by the defendants, at the Hallowell boom, were as follows:

| | | | |
|---|---|---|---|
| June | 19, 1899, | 281,230 | feet. |
| " | 21, " | 231,860 | " |
| " | 23, " | 204,550 | " |
| " | 26, " | 290,810 | " |
| August 30, " | | 35,040 | " |
| Total, | | 1,043.490 | feet. |
| Undelivered logs, | | 4,956,510 | feet. |

The parties had no conference for the purpose of fixing the market price for this season, but shortly after the delivery of logs on the 26th of June, the defendants' attorney sought an interview with James W. Parker, then the president and manager of the plaintiff company, which resulted in a material disagreement. From the letter of the defendants' attorney of June 30, 1899, and the reply of the president of the plaintiff company of July 5, 1899, it appears that the defendants' claim was that the market price of the logs for this season of 1899 should be "the actual market price at the place and time of delivery, namely, the Hallowell boom," while that of the plaintiff was that it should be "the contract price under the rules stated by you" (defendants) "in court and in your two writs."

Under the conditions existing in the seasons of 1897 and 1898, the latter rule of construction had, in two suits, been adjudicated as determining their rights under the same contract. There had been at the Hallowell boom, during these seasons, no sales of logs, and the market price at the Moosehead Lake dam in February and March, at woods scale, was the basis upon which the price at the Hallowell boom, at re-scale, was ascertained by the addition of the customary elements of expense and loss in delivery, amounting to $1.50 per thousand.

In the absence of a definite agreement the market price of goods to be delivered would be the price prevailing at the time and place of delivery; but if there is no market price at the place of delivery, the value of the goods should be determined at the nearest place where they have a market value by the addition or deduction of the difference in the cost of delivery. *Berry* v. *Dwinel*, 44 Maine, 255; *McGregor* v. *McDowell*, 8 Wend. 435. And if no sales at the precise time, then reference should be had to sales nearest the time. *Dana* v. *Fiedler*, 12 N. Y. 40, 62 Am. Dec. 130. There were sales in 1899, at the Hallowell boom, at the time the logs were deliverable, and the market price of the logs to be delivered would be thereby fixed, unless the general rule is controlled by an express agreement of the parties.

In terms quite as definite as those specifying the place of delivery, the parties, by a parol agreement, fixed the time which was to govern in determining the market price at the place of delivery, namely,

"February or March," or "the early spring, or before the new logs came to market."

The defendants' counsel attaches importance to the words used by Mr. Bradstreet in connection with this new arrangement: "When all the logs were being sold." He testifies: "I asked Mr. Lawrence if he had any objection to fixing it in February or March, while all the logs were being sold, and he said that would suit him." And the plaintiff's counsel also attaches significance to the words, "Before new logs came to market," used by Mr. Lawrence, who testifies: "The substance of that conversation was that the price on these logs should be established and agreed upon in the early spring or before new logs came to market." These words were indicative of the convenience recognized by both parties of fixing the time in those months. The agreement was so made, and remained unchanged. It could not be changed simply by new conditions, unless of a character which made its observance impossible or at least impracticable. By reason of more numerous sales in the previous fall and winter months there had been a lessening of the sales at Moosehead Lake dam in the months of February and March. From thirteen sales in 1898, aggregating 14,000,000 feet, they had fallen to seven sales in 1899, aggregating 6,000,000 feet. But this was no insignificant quantity, sufficient as it must be considered for a standard of price in these months to measure, with proper additions for cost and loss in delivery, the market price at Hallowell boom, where no sales had then been made. However desirable it might be for the parties to have reached an understanding as to the price before the end of the season, there was no necessity or justification for the defendants' refusal or omission to deliver the full complement of logs. They had been paid on account of each thousand the sum of two dollars, and there is no intimation that the plaintiff was not financially responsible. There was even a tender of security if it should be required.

After full performance by the plaintiff of its agreement, it had until the close of the season the right to demand of the defendants, fulfilment of their agreement. The defendants constructively broke the contract on the eleventh day of August, by parting with title to such a quantity of logs as made it impossible for them to furnish the

stipulated amount; but the plaintiff could and did waive the breach on that particular day by subsequently accepting an instalment of logs, and the date when the Hallowell boom closed, August 29, 1899, must be taken as the time when the breach of the contract was made by the defendants, which gave full right of action to the plaintiff. *Curtis* v. *Howell,* 39 N. Y. 211; *Dingley* v. *Oler,* 117 U. S. 490.

Notice from the seller that he will not deliver the goods is no breach until the time for delivery is past. Anticipated injury is not the ground of legal recovery. *Phillpotts* v. *Evans,* 5 Mees. & W. 475; *Daniels* v. *Newton,* 114 Mass. 530, 19 Am. Rep. 384; Benjamin on Sales, § 759.

The rule of damages in the first count is simple in statement and application. The plaintiff is entitled as damages to the difference between the contract price and the market price in February and March, at the Hallowell boom. There being no sales in these months at the place of delivery, the market price of spruce mill logs of ordinary quality at the Moosehead Lake dam, the nearest market, is to be ascertained, and to that price the customary additions are to be made rendering it equivalent to a market price for such logs at the Hallowell boom. Benjamin on Sales, § 882a.

A tabulation of sales, aggregating 6,244,216 feet, made in February and March, at the Moosehead Lake dam, shows approximately an average price of $8.90. To this is to be added $1.50 for increased expense and loss in delivery at Hallowell boom, under re-scale, and the average market price at that place is found to be $10.40 per thousand. It is claimed, and we think fairly, that the logs embraced in this contract were of superior quality, by reason of the unusual care that was exercised in culling them. We allow fifty cents a thousand on this account, making the market price all told of these logs, in February and March, $10.90 per thousand. The plaintiff was to pay two dollars per thousand in advance and be entitled to a discount of two per cent on the balance, if paid in cash. The quantity of logs which the defendants failed to deliver was 4,956,510 feet. The cash payment of $2.00 per thousand on these logs would amount to $9,913.02 and the balance of the purchase

money, at $8.90 per thousand had all the logs been delivered would have been $44,112.94. Two per cent discount on this sum would be $882.26 leaving the balance, if paid in cash, $43,230.68. Adding the advance payment of $9,913.02 we have the cash price which the defendants would have been entitled to receive, viz: $53,143.70.

The plaintiff is entitled to recover as damages for the non-delivery of these logs, the difference between $53,143.70 and their market price at the Hallowell boom, where they should have been delivered, at the date of the breach. The evidence shows that that market price was $11.50 per thousand, or $56,999.86 for all the undelivered logs. But because the element of credit enters into the last market price, we think it would be just to deduct two per cent also from the sum of $56,999.86, reducing the price to a cash basis, and making the cash value $55,859.87. The difference between this sum and $53,143.70, the contract price, is $2,716.17; and this sum, with interest added from the date of the breach to the date of judgment, is what the plaintiff is entitled to recover under the first count.

The claim for special damages in the second count implies a duty on the part of the plaintiff "to improve all reasonable and proper opportunities to lessen the injury," and if it had been able to procure in the market a supply of logs, it could recover of the defendants only general damages measured by the difference in market prices. *Sutherland* v. *Wyer*, 67 Maine, 64. In anticipation of the possible failure of the defendants to fulfil their contract, it seasonably took measures to purchase a supply, and found available only the logs held by the defendants and which they offered to it at the market price prevailing at the time. Before actual breach of the contract the plaintiff could not purchase of the defendants upon these terms without waiving its right of action for the non-delivery of the logs. *Havemeyer* v. *Cunningham*, 35 Barb. 522; *Consumers Cotton Oil Co.* v. *Ashburn*, (C. C. A.) 81 F. R. 331. The offer made was in the nature of a tender, and its acceptance would operate as a bar, and by declining it and demanding of the defendants a fulfilment of the contract the plaintiff's rights could not be prejudiced.

The general rule of damages for the non-delivery of goods

excludes the elements of profits and losses. Prospective gains, ascertained by subsequent events, could not more properly increase the plaintiff's damages than could such losses diminish them. *Berry* v. *Dwinel*, 44 Maine, 255; *True* v. *Inter. Telegraph Co.*, 60 Maine, 9, 11 Am. Rep. 156.

There are cases where both parties understand that special circumstances exist which affect the subject matter of the contract and reasonably contemplate the damages which would result from the breach of such a contract, and gains prevented and losses sustained thereby may be recovered. *Hadley* v. *Baxendale*, 9 Exch. 341; *Griffin* v. *Colver*, 16 N. Y. 489; 69 Am. Dec. 718, are the leading English and American cases. Benjamin on Sales, 6th Am. ed. § 870, 875; Mayne on Damages, Am. ed. § 13; Sedgwick on Damages, § 76; *U. S.* v. *Behan*, 110 U. S. 338; *Cohn* v. *Norton*, 57 Conn. 480, 5 L. R. A. 572; *Grand Tower Mining, etc., Co* v. *Phillips*, 23 Wall. 471.

But the general doctrine of these authorities is limited by conditions which prevent its application to this case. "The damages must be such as may fairly be supposed to have been in the contemplation of the parties at the time when they made the contract." Benjamin on Sales, § 882a.

In the very general terms of the original contract and as modified by parol, no agreement is expressed or can be necessarily implied in reference to the special uses intended by the plaintiff in the purchase of the logs. In his testimony Bradstreet denies all knowledge of any special purpose of the plaintiff in making the contract, and the defendants sold to others for the same price they demanded of the plaintiff. Although the unusual demand for lumber and the exhaustion of the supply of logs on the Kennebec River at the close of the season of 1889, show that the failure of the defendants to complete the delivery of the quantity stipulated, probably prevented the plaintiff from realizing large gains from manufacture and re-sale in the usual course of business, this local condition at the date of the breach of the contract and the unprecedented rise of prices in the general lumber market immediately thereafter, could not have been foreseen by the parties. This is clearly shown by the fact that the market value, as indicated by large sales of logs at and in the vicinity of the

Hallowell boom as late as October 4th, did not exceed $11.50 per thousand. The general rule and its exceptions exclude the special damages claimed under this count as too remote and speculative.

The failure of the defendants to deliver the full quantity of logs, as agreed, gives the plaintiff a right of action to recover, under the third count, such balance of the $12,000 advanced according to the contract as remains after payment for the logs received. Of this sum $2,087 was the advanced payment of two dollars per thousand on the 1,043,499 feet of logs delivered by the defendants. Upon the balance, $9,913, the plaintiff is entitled to interest from the date of its payment, March 15, 1899, until there was a delivery of logs. This amounts to $153.56. The balance of payment with interest added is $10,066.58. Against this is to be credited the amount remaining due for logs delivered, less a deduction of two per cent for cash. 1,043,499 feet at $8.90 per thousand amounts to $9,287.14. Deducting two per cent leaves $9,101.40. The difference between this sum and $10,066.58 is $965.18, and this sum, with interest from the date of the breach, is the amount which the plaintiff is entitled to recover under the third count.

*Judgment for the plaintiff for $3,681.35, with interest from August 29, 1899, to the date of judgment.*