## H. O. JOHNSON AND ANOTHER v. WILLIAM C. WRIGHT.[1]

July 20, 1928.

No. 26,770.

**Assignor and assignee of interest in drilling contract may join in an action for breach of the contract.**

1. J contracted with W to drill for iron ore on the latter's land. J assigned a certain portion of the earnings under the contract to B to secure the payment of wages to five employes. W breached the contract. J and B sued to collect damages because of loss of profits. *Held*, B's assignment was an equitable assignment operative upon the money recoverable; and that the plaintiffs, being interested in a single cause of action, namely, the breach of contract, may join in an action to recover thereon notwithstanding the fact that their interests are distinct and severable.

**When contractor may retract his refusal to perform.**

2. A contractor who has improvidently or unadvisedly refused to perform his contract may, before the other party has either manifested an election to rescind the contract or changed his position in reliance on the repudiation in such a way as to make performance more burdensome, retract the refusal and go on with the contract.

**When anticipated profits may be recovered for breach.**

3. In an action to recover damages for breach of a contract, anticipated profits may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness.

**Finding as to loss of profits sustained.**

4. Upon the facts and circumstances stated in the opinion, the evidence was sufficient to support a finding as to loss of profits, which in such a case is the difference between the cost of performing the contract and the contract price.

**Question not reviewable in supreme court.**

5. This court cannot pass upon the plaintiff's financial ability to perform the contract when that question was not raised in the trial court.

[1]Reported in 220 N. W. 946.

**Charge to jury susceptible of erroneous construction.**

    6. The instructions of the court were susceptible to a construction embracing an erroneous measure of damages in that they involved a double recovery.

Appeal and Error, 3 C. J. p. 696 n. 61.
Contracts, 13 C. J. p. 657 n. 90.
Damages, 17 C. J. p. 788 n. 70; p. 789 n. 71; p. 790 n. 72; p. 1042 n. 28; p. 1070 n. 64.

Action in the district court for St. Louis county to recover for breach of a contract. There was a verdict for the plaintiffs, and defendant appealed from an order, Magney, J. denying his motion for a new trial. Reversed.

*W. A. Pittenger,* for appellant.
*Essling & Bundlie,* for respondents.

WILSON, C. J.

Defendant appealed from an order denying his motion for a new trial.

Defendant and plaintiff Johnson, who live in St. Louis county, made a written contract wherein the former agreed to pay the latter $4.50 per foot for drilling for iron ore on defendant's 300-acre tract of land in Canada. The contract specified that it should "cover approximately three thousand (3,000) feet of drilling; such drilling to be done in such locations and to such lengths as said first party [defendant] may direct."

Johnson at considerable expense moved his equipment to Canada and located upon defendant's land where he constructed camp buildings. He drilled one hole 600 feet deep, and then defendant, as determined by the jury, breached his contract.

In such partial performance of the contract plaintiff Johnson became indebted to five employes in the sum of $1,448.40. In order to secure the payment of this sum, he made an assignment of that amount of his earnings under the contract to O. T. Bundlie, who is joined with Johnson as a party plaintiff in this action to recover damages for breach of contract. Defendant stated in his written

consent to the assignment: "No liability attaches to me unless Johnson continues with the contract and earns money thereunder." Fifty per cent of the earnings under the terms of the contract were to be paid to Bundlie until the indebtedness was paid. Defendant counterclaimed that Johnson had breached the contract, not he. There was a balance of about $1,100 unpaid to Johnson for work actually done.

1.   It is claimed that there is a misjoinder of causes of action and parties plaintiff.   The claim is that Bundlie received under the assignment only a right to participate in money earned in the performance of the contract and not in damages awarded for a breach thereof.   In so far as the complaint is concerned, there was money earned in the partial performance of the contract though such money was absorbed in the verdict for damages for loss of profits because of the theory upon which the case was submitted to the jury.   But that aside, we are of the opinion that the situation and relation of the parties and the assignment clearly show a constructive appropriation of a specified amount of the money coming from defendant to Johnson and arising out of the contract, including a breach thereof. It could hardly have been the intention of the parties to intend any such distinction.   Natural justice and essential fairness, regardless of the words contemplating the usual and ordinary thing, command that we construe the instrument as an equitable assignment operative upon any money here involved.

But the argument is that the statute, G. S. 1923, § 9277, requires that the causes of action which may be joined must affect all parties to the action.   To this proposition is cited Anderson v. Scandia Bank of Minneapolis, 53 Minn. 191, 54 N. W. 1062, in which the cause of action in behalf of the wife only contained essential ingredients not included in the joint cause of action.   What is the cause of action here?   It is the breach of the contract.   There is but one cause of action.   Bundlie in his representative capacity has acquired an interest therein.   The proportion of such interest is not important to defendant.   The plaintiffs, being interested in a single cause of action, may join in an action to recover thereon notwithstanding the fact that their interests are distinct and severable.

Carlton Co. Farmers Mut. F. Ins. Co. v. Foley Brothers, 111 Minn. 199, 126 N. W. 727.

2. According to the plaintiff's evidence defendant breached the contract on April 18, 1927, by telling Johnson he could not do any more work. May 2, 1927, Johnson wired Wright charging such cancelation of the contract. On the same day Wright wrote Johnson a letter in strong language denying that he had canceled the contract. This letter and other evidence in the case were sufficient to have supported a finding that there was a withdrawal or renunciation of the breach, which defendant consistently denied making.

A contractor who has improvidently or unadvisedly refused to perform his contract may, before the other party has either manifested an election to rescind the contract or changed his position in reliance on the repudiation in such a way as to make performance more burdensome, retract the refusal and go on with the contract. 13 C. J. 657, § 732(g) ; 3 Williston, Contracts, § 1335, p. 2389.

This rule of law however is not applicable to the questions before this court. The answer denies the repudiation and does not plead a withdrawal or renunciation of the alleged breach. The court did not, in the charge to the jury, cover this question or make any reference thereto. Nor did defendant request any such charge or take any exception to the absence of appropriate instructions in reference thereto. The record presents nothing relative to this question for our consideration.

3. An assignment of error is directed at the proof of the loss of profits as the measure of damages. The claim is that upon the record they are speculative, uncertain, contingent, and not within the realm of reasonable certainty.

Anticipated profits may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness. This means that the nature of the business or venture upon which the anticipated profits are claimed must be such as to support an inference of definite profits grounded upon a reasonably sure basis of facts. Force v. Gottwald, 149 Minn.

268, 183 N. W. 356. This rule does not call for absolute certainty.

4. The argument is that Johnson could not reasonably foretell what success he would have in drilling 3,000 feet. If this contract called for 3,000 feet in one hole defendant's argument would be quite convincing. Johnson admits that sometimes he makes a profit and sometimes he sustains a loss in projects of this character. That is true of all work. A driller's success does not depend solely upon the character of the substance which he must penetrate. The deeper he goes the greater and heavier the load, the greater the strain and peril of breakage. But we must assume that the price contemplates and is commensurate with a certain amount of probable disappointment, trouble, and loss.

In this case Johnson has made one hole 600 feet deep. He knows the character of the substance which he has gone through. It was not difficult. Johnson has had nearly 40 years' experience as a driller. The parties intended to make the first hole 1,000 feet unless iron was found. Four hundred feet remained to be drilled. Does the situation permit a jury safely to find that Johnson could make a profit having in mind the possibility of trouble and loss before reaching such depth? We think it does though the question is a close one. Johnson with his extensive experience contracted to drill 3,000 feet. He had an outfit with which he could go 2,500 feet. He apparently had no fear of finding impenetrable substance, and it is not suggested that such would be at all probable. Indeed no one suggested that such was even possible. The risk is apparently more closely connected with the possible breakage, which is the unusual and not the ordinary. Of course it is possible; but the jury is not so much concerned with possibilities as with probabilities. What is the common, usual, and ordinary experience of men in such work? It would seem to be favorable to the occupation or else one would not continue in the work so long as Johnson has. Otherwise men would not venture the hazards of such contracts. These are only some of the things which the jury could consider in analyzing Johnson's testimony to ascertain the cost to him to perform the contract. The measure of damages in such a case is the difference between the cost of performing the contract and the con-

tract price. We are of the opinion that the evidence is sufficient to authorize and enable the jury to find the loss of profits with reasonable certainty, and that such determination is not conjectural or speculative.

5. Defendant argues that Johnson has not shown that he was financially able to perform the contract. It is sufficient to say that the evidence does not disclose his inability as a matter of law but does disclose a situation in which this question should have been submitted to the jury. Defendant made no request in reference thereto and did not take any exception to the failure of the charge in that respect. He is not in a position to urge the point here.

6. In giving the instructions to the jury the court included this:

"They [plaintiffs] seek to recover from defendant Wright payment for the work completed and to recover from Wright the expenses Johnson had paid or incurred in making preparations for the performance of the contract, and the net profit he would have earned, if permitted to perform the contract. * * *

"If you find from the evidence that the defendant breached the contract, the plaintiffs are entitled to recover at your hands, and if you find from the evidence that the plaintiff, Johnson, breached the contract, the defendant is entitled to recover at your hands. * * *

"If you find from the evidence that Wright refused to permit Johnson to perform the contract, and Johnson was willing and able to perform the contract, the plaintiffs are entitled to recover against Wright such damages as are the natural and proximate consequences of the breach, or such as may reasonably be supposed to have been contemplated by the parties, when making the contract, as the probable result of the breach.

"Where a party is prevented from performing his contract, and from realizing a profit which was contemplated by the terms of the contract as the result of its performance, a recovery of damages may be had equal to the profits which would have accrued directly from a performance of the contract."

The first paragraph of the portion quoted is an unfortunate statement of plaintiffs' claim. A strict construction of the charge would

lead to the conclusion that it contemplated only a consideration of loss of profits as a basis for an award of damages. But defendant claims that it meant plaintiffs could also recover for work done and also for expense incurred in preparation to perform the contract. The original complaint sought only to recover $8,000 for loss of profits. Late in the trial plaintiffs were permitted to amend their complaint to claim $3,500 as loss of profits and $4,500 expense. Plaintiffs put in evidence exhibit P, which is an itemized statement of the claimed expenses of $4,572.40 with an estimated cost of $3,675 to complete the work at a total expense of $8,247.40, which when deducted from the contract price of $13,500, less $1,600 which had been paid, leaves $3,652.60 as net profits which would be the largest amount recoverable under our construction of the charge. But the jury returned a verdict for $3,923.40. We cannot determine how this was reached, and it may be that the jury misunderstood the charge and construed it as defendant seeks to have it construed. We cannot locate the error. It may involve more than just the amount of the difference. If so it embraced an erroneous measure of damages in that it involved a double recovery. Periodical Press Co. v. Sherman-Elliott Co. 143 Minn. 489, 174 N. W. 516; Columbus Min. Co. v. Ross, 218 Ky. 98, 290 S. W. 1052, 50 A. L. R. 1394; Holt v. United Security Life Ins. & Tr. Co. 76 N. J. L. 585, 72 A. 301, 21 L.R.A. (N.S.) 691.

We reach the conclusion that the charge, in view of the amendment, was susceptible to such construction which would rest upon an erroneous principle. The result is that there must be a new trial.

Reversed.