**MIDWEST SHEET METAL WORKS, a co-partnership, Plaintiff,**

v.

**FRANK SULLIVAN COMPANY, a corporation, Defendant.**

**No. 3–62–Civ.–191.**

United States District Court
D. Minnesota
Third Division.
April 3, 1963.

James H. Geraghty, Altman, Geraghty & Mulally, St. Paul, Minnesota, for plaintiff.

Vincent P. Courtney, Allen & Courtney, St. Paul, Minnesota, for defendant.

DEVITT, Chief Judge.

Defendant moves for judgment *non obstante veredicto* or a new trial after the return of a jury verdict against it for $85,000 based on the cancellation of an agreement assigning the mechanical work on a construction contract.

Jurisdiction is established by the diversity of citizenship of the parties and the required amount in controversy.

A contract for an addition to the St. Paul, Minnesota post office was awarded, on October 19, 1961, by the General Services Administration, United States Government, to Electronic & Missile Facilities, Inc. (to be called EMF) of New York. It subcontracted the mechanical work[1] on December 4, 1961 to Frank

---

1. Defined in the contract as including "All plumbing, fire protection sprinkler system gas piping, drinking water system, kitchen refrigeration, heating apparatus, water softeners, dealkalizer, air conditioning, ventilation and nonconducting covering work required under the principal contract * * *."

Sullivan Company, the defendant, for an agreed price of $1,650,000. Defendant sent one of its men, John A. Sullivan, to St. Paul to interview local contractors who would be able and willing to assume responsibility from defendant for performance of parts of the mechanical contract. John A. Sullivan interviewed several Twin Cities contractors. He carried on negotiations with plaintiff, represented by its President, Michael J. Elnicky, for the assignment of the entire mechanical contract. These negotiations culminated about a week later in the execution, on January 28, 1962, of the contract for the claimed breach of which this action was instituted. The contract reads as follows:

"The Midwest Sheet Metal Company of 340 Taft St., Minneapolis, Minnesota, agrees to take over Frank Sullivan Company's contract with Electronic Missile Facilities, Inc., in the amount of One Million Five Hundred Fifty and 00/100 Dollars ($1,550,000.00).

"The cost of the bond will be paid for by the Frank Sullivan Company.

"The Midwest Sheet Metal Company will man the above-mentioned project on January 29, 1962, to show good faith regarding this contract. The above agreement is made between

"/s/ MIDWEST SHEET METAL
"M. J. ELNICKY
"/s/ FRANK SULLIVAN CO.
"JOHN SULLIVAN."

On January 30, 1962, defendant wrote plaintiff saying that the "agreement made on January 28th between the Midwest Sheet Metal Company and the Frank Sullivan Company is hereby cancelled." It was signed:

"Frank Sullivan Co.
"John A. Sullivan (signed)
"JOHN A. SULLIVAN"

This action followed.

Defendant assigns many grounds as a basis for its motions for judgment n. o. v. or a new trial, but its principal contentions are that (1) the agreement of January 28, 1962 was ineffective to bind the parties because the approval of EMF, the general contractors, was not obtained to the subletting or assignment as required by the EMF-Sullivan contract; (2) it was error to submit to the jury the issue of the apparent authority of the agent, John A. Sullivan, to bind the defendant because it appeared as a matter of law that John A. Sullivan had no such authority; (3) no reliable evidence as to damages was received to support a finding for $85,000.

These contentions will be considered seriatim:

■ Defendant argues that it is entitled to judgment n. o. v. because of the inclusion, in the Sullivan-EMF contract, of a clause prohibiting subletting or assignment without the consent of the contractor, and since such consent was not obtained, the contract in issue is void. The pertinent provision reads:

"the SUBCONTRACTOR shall not assign this agreement or any part thereof or any sums due hereunder, or sublet, assign or subcontract, any part or all of the work to be performed hereunder or the proceeds hereof, without the prior written consent of the CONTRACTOR."

There is no dispute here that the prohibition against assignment is a valid provision of the Sullivan-EMF contract. Plaintiff, however, takes the position that such a prohibition cannot be relied upon by the assignor to defeat recovery here. The Court agrees. The general rule is stated in Restatement, Contracts, Sec. 176:

"A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment * * *."

To the same effect is 3 Williston, Contracts, Sec. 422, p. 140 (3d ed.):

"A prohibition of assignment * * is intended for the benefit of the

debtor and cannot affect the legal or equitable rights of the assignor and assignee as between themselves."

See also 4 Corbin, Contracts, Sec. 873, p. 497; Charles I. Hosmar, Inc. v. L. P. Federico & Son, 89 N.H. 378, 199 A. 567 (N.H.1938) (in which the Court said that the argument that prohibition against assignment could be relied upon by the assignor, was "wholly untenable."). Accord, Home Builders of Mercer County, Inc. v. Dellwood Corp., 379 Pa. 255, 108 A.2d 731 (1954); Stark v. National Research & Design Corp., 33 N.J.Super. 315, 110 A.2d 143 (1954); Nolan v. J. & M. Doyle Co., 338 Pa. 398, 13 A.2d 59 (1940); McClendon v. Dean, 45 N.M. 496, 117 P.2d 250 (1941); Johnston v. Landucci, 21 Cal.2d 63, 130 P.2d 405, 148 A.L.R. 1355 (Cal.1942).

It would appear that Minnesota is in accord with the majority rule. See, e. g., Hogue v. Minnesota Packing & Provision Co., 59 Minn. 39, 60 N.W. 812. And see Annotation, 148 A.L.R. 1361.

■ Thus, defendant may not rely upon the prohibition against assignment contained in the EMF contract. This prohibition clause was relevant to the question of the parties' *intent* to make a contract and the jury was so instructed. But it may not be availed of by defendant as an absolute defense.

■■ Defendant next contends that the issue of the apparent authority of John Sullivan to bind defendant should not have been submitted to the jury. The defendant did not take exception to the Court's instruction on this issue.[2] Examining the evidence received, it is the Court's view that sufficient showing of apparent authority was made to submit the question to the jury and to support the verdict returned. The evidence must be viewed in the light most favorable to the prevailing party. There was direct evidence to show that defendant sent John Sullivan to St. Paul to negotiate with subcontractors for the assumption of responsibility for parts of the mechanical contract. John Sullivan held himself out as possessing authority to sublet all of the mechanical contract on his own. He talked with several contractors and claimed such authority and it is not surprising that they, and plaintiff, regarded him as possessing it. He had such appearance. The fact that his surname was the same as that contained in the defendant corporation's name may not have been without some significance to those with whom he dealt. Defendant should have known that this impression might be left when it sent him here in the guise it did. And, as above stated, defendant, through John Sullivan, wrote plaintiff on January 30, 1962 cancelling the agreement previously made. The jury may well have reasoned that this action, very probably taken at the instance of, or at least with the knowledge of, Frank Sullivan, President of defendant, was inconsistent with the claim of

2. The Instruction reads:

The rule of law is that the principal is bound by the acts of the agent within the apparent authority which he knowingly permits the agent to assume or which he holds the agent out to the public as possessing.

So the factual question is whether the principal, Frank Sullivan, has by his voluntary acts placed the agent, John Sullivan, in such a situation that a person of ordinary prudence conversant with business uses and the nature of the particular business is justified in presuming that such agent has the authority to perform the particular act in question, in this case, to make the disputed contract.

It should be pointed out, however, that the principal is only liable for that appearance of authority which was caused by himself. The statements or acts of the agent alone cannot be the basis for a finding of apparent authority, and so in summary, and to put it in another way, where one has reasonably and in good faith been led to believe from the appearance of authority which a principal permits his agent to have, and because of such belief has dealt with the agent, then the principal will not be allowed to deny the agency to the prejudice of a third party dealing with the agent, and is bound and is responsible for the acts of that agent.

a lack of authority in John Sullivan to make the contract in the first place. The jury's verdict, in so far as it incorporates a finding of authority on the part of John Sullivan to act for the defendant, is amply supported by the evidence.

 Defendant next contends that the amount of the verdict is not supported by the evidence. Both parties agree that the measure of damages is loss of anticipated profits, and that such loss must be proved "with a reasonable degree of certainty and exactness." Johnson v. Wright, 175 Minn. 236, 220 N.W. 946 (1928). But "This rule does not call for absolute certainty," Ibid.

Plaintiff estimated that its costs of performance was $1,362,532.00, giving an anticipated profit of about $188,000.00. This estimate of cost was drawn from a detailed examination and estimate of the various factors and items which were necessary for the completion of the project. Many of the cost estimates came from the defendant's own analysis of the project. There was other evidence of the costs involved. There was testimony demonstrating that the contracting business is a risky one. Unknown factors such as weather, labor strikes, and shortage of materials, may make an otherwise profitable enterprise unprofitable. But this does not detract from the fact that an adequate showing was made that at the time of making this contract, plaintiff reasonably anticipated a profit of $188,000. The jury's verdict for $85,000 is reasonable when considered in the light of all of the testimony. The jury's verdict as to damages is supported by ample evidence.

Defendant advances other grounds in support of its motion dealing, among other subjects, with alleged errors in the giving of, and in the refusing to give, certain instructions, and in the reception of evidence. It is enough to say that the Court has considered each of those contentions and views them as being without persuasive merit.

It is my view that the parties had a fair trial wherein the fact issues were properly presented to the jury under adequate instructions, and that the verdict rendered is supported by substantial evidence.

The motions are denied.