Dorothy **EDLING**, Respondent,

v.

**STANFORD TOWNSHIP**, Appellant.

No. C4–85–1168.

Court of Appeals of Minnesota.

Feb. 18, 1986.

Michael F. Williams, Princeton, for respondent.

Barry L. Blomquist, North Branch, for appellant.

Heard, considered and decided by LANSING, P.J., and HUSPENI and LESLIE, JJ.

## OPINION

LANSING, Judge.

Stanford Township appeals from a judgment entered after a jury awarded $13,500 to Dorothy Edling based on the township's failure to maintain and regulate a part adjacent to Edling's campground and $2,500 based on the township's negligent maintenance of a public road. Edling appeals the trial court's ruling that a deed under which she conveyed the property to the township so long as the property is used for "park purposes" conveys a fee simple absolute. We affirm in part, reverse in part, and remand for trial.

## FACTS

Dorothy Edling and her husband acquired approximately 160 acres of land adjacent to Blue Lake in Stanford Township in 1952, and Edling began operating a boat rental business. In 1953 the Edlings conveyed to Stanford Township a parcel of land abutting Blue Lake lying in the northwest corner of the property. The deed contained the following language:

> To have and to hold the same * * * for so long as the said party of the second part [Stanford Township] shall keep and maintain said above described real property as and for park purposes; and said parties of the first part [Edlings] do herewith and hereby so dedicate the same to the uses and purposes of the public in said Stanford Township.

Edling's boat rental business evolved into a campground business. The town park created by the 1953 deed was used mainly for swimming and as a boat launch. A town road on the northern border of Edling's land provided access to the park.

The court ruled before trial that, as a matter of law, the township held fee title to the park, free of any conditions. The court's Finding XIII states:

That the language in the [deed of dedication] purporting to reserve some type of right in Grantors Edling is vague and indefinite because it does not specifically recite the conditions or circumstances under which Grantee Stanford Township would be considered to no longer be keeping and maintaining said property as and for park purposes. In addition, there is no recital of a specific date on or after which any rights of Albert N. Edling or Dorothy M. Edling would end under this language.

The jury found in special verdict interrogatories that the township failed to "properly maintain and regulate Blue Lake Park since December 30, 1976," and the township carelessly or negligently maintained the town's road adjacent to Edling's property in such a manner as to cause flooding of Edling's land. It awarded $13,500 for economic damages suffered as a result of the failure to maintain and regulate the park and $2,500 for the negligent maintenance of the town road.

Stanford Township moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. Edling moved for post-trial relief, requesting that damages for the failure to maintain and regulate the park be increased to $45,000. The court denied the motions, and the township appeals, asserting the evidence is insufficient to support the damage awards. Edling filed a notice of review on the trial court's determination that the township held fee title to the park free of any conditions.

## ISSUES

1. Is the evidence of lost profits sufficient to support a jury award of damages for the township's failure to maintain and regulate the park?

2. Is the evidence sufficient to support a jury award of damages of $2,500 for negligent maintenance of the town road adjacent to Edling's property?

3. Is Edling entitled to a jury trial on whether the property reverts to her under the deed?

## ANALYSIS

### I

In Count 4 of the complaint, Edling alleged that the township "failed to adequately patrol [the] park and to police the activities of persons using it and * * * failed to provide * * * adequate general maintenance, all to the economic harm and detriment of [Edling and her] business." The legal theory supporting recovery was not further elucidated during the trial, and the jury was not instructed on the elements of nuisance or negligence in conjunction with this claim.

On the issue of damages, Edling testified at trial that since 1955 she had made numerous complaints to the township board about occurrences in the park, including people being there "all hours of the night," nude swimming, profanity, loud stereos, drinking, and slanderous comments. Edling said that the patrons of her campground complained about nude swimming and lewd language. She said that they did not complain on a regular basis, but "they just didn't come back anymore after I didn't do anything about it. I couldn't do [anything] about it."

Edling's complaints were acknowledged by board member Raymond Stoeckel, but Stoeckel expressed doubt on their validity because he once investigated Edling's complaint of overnight camping at the park and found no one there. Stoeckel testified that signs regulating the park's use had been posted and torn down.

Edling's daughter, Beverly Clayson, testified that people at the park swam at night and threw bottles, which upset and frightened the campers. Clayson also said that she hadn't helped her mother at the campground in the last six years "because business has declined so much."

Edling's tax returns, presented as evidence by the township, show that between 1964 and 1982 she operated at a loss every

year except two. The returns also show that Edling's gross revenues increased yearly until 1981. Edling explained those figures as follows:

> [I]f my gross income showed more, it wasn't from the campers, it was from people that worked on the trunk highways, they came there and they stayed nights in my camp because they were working on trunk highways 47 and 65 and so forth. .

In 1981 Edling reduced the permitted number of licensed campsites from 50 to 20. She testified that she reduced the number of licensed campsites because "I don't get that many campers." No other testimony was offered on the issue of damages. Edling did not provide an estimate of lost business or profits, any record of cancellations, decreased occupancy rates or regular customers who failed to return.

The general rule on damages in Minnesota is that

> damages in the form of lost profits may be recovered where they are shown to be the natural and probable consequences of the act or omission complained of and their amount is shown with a reasonable degree of certainty and exactness.

*Cardinal Consulting Co. v. Circo Resorts*, 297 N.W.2d 260, 266 (Minn.1980) (quoting *Johnson v. Wright*, 175 Minn. 236, 239, 220 N.W. 946, 948 (1928)). The evidence, viewed in the light most favorable to the verdict, does not provide a factual basis for an award of damages. *See Hornblower & Weeks-Hemphill Noyes v. Lazere*, 301 Minn. 462, 467, 222 N.W.2d 799, 803 (1974). It would have been impossible for the jury to determine with any accuracy an amount of lost profits. The evidence is speculative on whether failure to maintain the park resulted in any damage at all. It was therefore error to deny the township's motion for judgment notwithstanding the verdict on this claim.

## II

The township also claims that there is insufficient evidence to justify the damage award of $2,500 for flooding of Edling's land caused by the township's negligent maintenance of the road leading to the park.

The testimony conflicts on whether Edling's land was subject to increased flooding. Edling testified that in 1982 4½ acres were flooded. She stated that the flooding was a result of poor maintenance and plugging of the culvert under the road. She also stated that the flooded area could not be put to any use. Her son, Clayton Edling, testified that the area subject to flooding was twice the size of the courtroom. Township supervisor Raymond Stoeckel, who testified that he was familiar with the Edling property, stated that there had been no increase in the area subject to flooding and that the drainage ditches were inspected annually and were working properly. Township supervisor Walter Springer also testified that there had been no increase in the size of the wet spots over the years and that the ditches and culvert operated properly.

Edling testified that the land adjoining her property was worth $2,000 per acre. Isanti County assessor Curtis Boettcher testified that wetland had an estimated market value of $100 per acre and that the Edling property included 25 acres of wetland. He also testified that pasture land had an estimated market value of $450 per acre and that the Edling property included 96 acres of pasture.

When an appellate court reviews the sufficiency of the evidence to support a jury verdict, it is fundamental that the court not substitute its judgment on disputed questions of fact. *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169, 172 (Minn. 1977). The evidence provides a basis for the jury to find that the township acted negligently in maintaining the culvert. The evidence is also sufficient to support the damage award; a juror could reasonably have concluded that the flooded land was pasture, worth $450 per acre, and that 4½ acres had been flooded. The result of such conclusions would be a damage award of $2,025; the jury awarded $2,150. Strict mathematical accuracy is not required in

ascertaining damages. *Faust v. Parrott,* 270 N.W.2d 117, 120 (Minn.1978).

### III

The trial court held that, as a matter of law, Edling held no reversionary interest in the land deeded to the township. No evidence was permitted on whether the property is kept or maintained for park purposes. Edling argues that she is entitled to a jury trial on the question of whether her future interest has matured. We agree.

 The language contained in Edling's deed to the township creates a fee simple determinable, and Edling retained a possibility of reverter. *See, e.g., Consolidated School District No. 102 v. Walter,* 243 Minn. 159, 162–63, 66 N.W.2d 881, 884 (1954). It is not necessary, as the trial court's finding suggests, that an express provision for reverter to the grantor or her heirs be included in the creating instrument. R. Cunningham, W. Stoebuck, D. Whitman, *The Law of Property* § 2.4, at 44 (1984). Whether the deeded property is being used as a park is a fact question for the jury. *See State v. Independent School District No. 31,* 266 Minn. 85, 88–89, 123 N.W.2d 121, 124–25 (1963).

▪ The township maintains that the restriction is inoperative because Minn.Stat. § 500.20, subd. 2 (1980) (repealed by 1982 Minn. Laws ch. 500, § 5), provides:

> All covenants, conditions, or restrictions hereafter created by any other means, by which the title or use of real property is affected, shall cease to be valid and operative 30 years after the date of the deed * * * creating them; and after such period of time they may be wholly disregarded.

This provision, enacted in 1937, applies to a fee simple determinable. Fraser, *Future Interests, Uses and Trusts in Minnesota,* 28 Minn.Stat.Ann. 53, 57 (West 1947).

Edling's original complaint, in which she alleged that the property was no longer being used as a park, was filed February 17, 1983. The deed was recorded in December 1953. Therefore, 30 years had not elapsed at the time this litigation commenced, and the jury is not foreclosed from deciding whether the designated terminating event, the use of the property for other than park purposes, has occurred.

### DECISION

There is insufficient evidence to support an award of $13,500 for damages for failure to maintain and regulate the park. The jury's award of $2,500 for the township's negligent maintenance of the public road is supported by the evidence. Edling is entitled to a trial on the factual issue of whether the township is using property conveyed to it, by fee simple determinable, for park purposes.

Affirmed in part, reversed in part, and remanded for trial.