## RICHARDSON *v.* CHICKERING.

In a controversy as to the true location of a lot of land, monuments or boundaries as originally established or marked upon the ground, or such as have been recognized by the owners or parties in interest for twenty years or more, will prevail over the description of the original laying out of the land in the proprietors' records, and the courses and distances there expressed.

A party is estopped to deny the line between his own and adjoining land to be the true line, if he has sold and conveyed land up to such line, has pointed out the same as the true line, and has induced the defendant to purchase up to such line.

TRESPASS, *quare clausum,* brought by William Richardson and others against Elliot Chickering and others. Plea, the general issue.

The *locus in quo* was that part of lot twenty, in the second range and fifth division of lots in Hooksett, formerly Chester, remaining after sixteen acres were taken from off its northerly end by a line parallel to the northerly end line of said lot. At the time of the alleged trespass the defendants owned lot nineteen, in the same range, adjoining lot twenty on the east, and also the sixteen acres from off the northerly end of lot twenty.

The controversy between the parties related to the true location of lot twenty. The defendants contended that its location was indicated by lines of marked trees extending in continuation of the side lines of the sixteen acres to the rangeway on the south side of the second range, and offered evidence tending to show the existence of recognized corners and side lines of said lot, where they contended they were for about forty years. The plaintiffs, conceding that the northerly corner bounds of lot twenty, being the northerly corner bounds of the sixteen acres, were located as the defendants alleged them to be, contended that the sixteen acres were by mistake located too far west and partly upon lot twenty-one, and that the southerly end of lot twenty had never been definitely located until the spring or summer of 1851, when the plaintiff Richardson, acting as agent for himself and two of the defendants, went on with a surveyor and established the southern boundaries of the lot at the points where the plaintiffs claimed they were. To sustain their view of the location of lot twenty, the plaintiffs relied upon the. courses and distances and other description contained in the record of the original laying out of the lots in the fifth division by the proprietors of Chester in 1752 ; while the defendants relied upon the actual location of lot twenty by boundaries marked upon the ground, and recognized as the true boundaries of the lot

by all parties interested for more than thirty years, and especially by the plaintiffs themselves; and they offered evidence tending to show that in 1847 the plaintiffs, then owning lot twenty, and being about to cut off the wood and timber from it, directed their agent to call upon a former owner of the lot to point out to him its boundaries; that this was done, the boundaries to which the defendants now claim were then pointed out, being distinctly traced lines of marked trees; and the plaintiffs thereupon cut off the timber on lot twenty up to those lines, and no further: with other evidence of similar character.

Upon this point the court instructed the jury that if lot twenty was originally located by boundaries marked upon the ground, or subsequently thus located and recognized as correctly located for more than twenty years by all parties interested, including the plaintiffs themselves, that location must prevail rather than the description contained in the original laying out; and the actual lines and monuments marked upon the ground must control the courses and distances named in the original laying out: to which instructions the plaintiffs excepted.

The evidence further tended to show that in October, 1851, after the plaintiff Richardson, as he now claimed, had located the southerly end of lot twenty by establishing the boundaries to which the plaintiffs claim, he sold to Chickering, one of the defendants, one eighth of lot nineteen, the title to which was then in one Buntin, but without disclosing any agency for Buntin—the whole trade being made and completed with, and payment made to the plaintiff, and Chickering having no suspicion that the title was not in the plaintiff until a deed of the premises from Buntin was handed to him by the plaintiff—and that, as an inducement to Chickering to purchase, the plaintiff then and there pointed out to him the corner of lots nineteen and twenty, and the line between those lots to which the defendants now claim, and called his attention to the large

growth of valuable wood and timber on lot nineteen, being the same wood and timber for cutting which this action is brought, and to the fact that all the timber and wood upon lot twenty had been cut off, and that Chickering made the purchase relying upon these representations of the plaintiff. The evidence further tended to show that, in October, 1852, Richardson sold and conveyed to Chickering another eighth of lot nineteen, the title to which was in himself, and that subsequently, as agent for himself and the other defendants, and with the knowledge and approval of Richardson, Chickering cut off the wood and timber on lot nineteen up to the line which the plaintiff Richardson had previously pointed out to him as the true line of that lot, Richardson telling him at the time to go on and cut up to that line; that afterward, seeing upon a plan the line to which the plaintiffs now claim, as indicated thereon, he called Richardson's attention to it, and Richardson then told him that that line was a freak of the surveyor, and that the line up to which the defendants had cut was the true line between lots nineteen and twenty.

Upon this point the court instructed the jury that if they found, from the evidence, that the plaintiffs, or either of them, pointed out to Chickering at the time he purchased, and as an inducement for him to make the trade, the line to which the defendants now claim as the true line between lots nineteen and twenty, and that Chickering made the purchase relying upon this representation, and also pointed out the same line at the time Chickering was cutting off the wood and timber, for cutting which this action is brought, as an inducement to him to cut up to that line, the plaintiffs were estopped now to deny the correctness of that line, after having induced Chickering to purchase and cut off the wood and timber by those representations: to which instructions the plaintiffs excepted.

The jury returned a verdict for the defendants; the plain-

tiffs moved that the same be set aside, and the questions arising were transferred to this court.

*Cross & Topliff* and *Flint & Bryant,* for the plaintiffs.

*Kittredge* and *George, Foster & Sanborn,* for the defendants.

NESMITH, J.   The question involved in the first instructions given by the court to the jury in this case has been too often settled to be now considered open for argument or adjudication.   If lot number twenty was originally located by boundaries marked upon the ground, or subsequently thus located, and recognized as correctly located for more than twenty years by all parties in interest, including the plaintiffs themselves, that location must prevail rather than the description contained in the original laying out; and the actual lines and monuments, marked upon the ground, must control the courses and distances named in the original laying out.   This rule of construction was recently considered and recognized by the court in *Hall* v. *Davis,* 36 N. H. 569; *Hanson* v. *Russell,* 28 N. H. 111; *Colby* v. *Collins,* 41 N. H. 301; *Berry* v. *Garland,* 26 N. H. 473; *Clough* v. *Bowman,* 15 N. H. 504; *Prescott* v. *Hawkins,* 12 N. H. 267; *Day* v. *Enfield,* 11 N. H. 525; *Whitehouse* v. *Bickford,* 29 N. H. 479; *Hobbs* v. *Cram,* 22 N. H. 130; *Fellows* v. *Sawyer,* 26 N. H. 107; *Brown* v. *Gay,* 3 Gr. 126; *Esmonds* v. *Tarbox,* 7 Gr. 61; *Thomas* v. *Patten,* 13 Me. 329; *Clark* v. *Withey,* 19 Wend. 320; *Slater* v. *Rawson,* 1 Met. 451.   Recently, in New-York, the court, in reviewing the authorities on this subject, confirmed the old doctrine that a party is precluded, upon principles of public policy, from setting up or insisting upon a boundary line in opposition to one which has been steadily adhered to, upon both sides, for more than twenty years; and, in determining boundaries under a grant, natural objects as

landmarks are to be considered as binding before courses and distances. *Baldwin* v. *Brown*, 2 Smith (N. Y.) 359; 7 Cush. 375.

The principle of estoppel we believe to have been correctly stated to the jury by the judge who tried the cause. That principle has often been recognized, in this State and elsewhere. If a party is present, and sees another sell and convey property, whether real or personal, to which he may assert a title, without disclosing his title, or objecting to the sale or conveyance, and the sale is made with a full knowledge on his part, he will be estopped by his silence from thereafter setting up his title against the purchaser. *Corbett* v. *Norcross*, 35 N. H. 99. The whole principle involved in this part of the case is fully discussed and settled by the foregoing case; and the rule long recognized in equity is established as a just legal rule, and to be applied to parties accordingly. The same doctrine was fully established by our court in *Watkins* v. *Peck*, 13 N. H. 361. If an act be done by a party, which would be a fraud in him to impair, and which so influences another that he acts on it, the first actor is estopped from the power of retraction. 2 Stock. (N. J.) 510. A representation, which estops the party making it from denying its truth, must not only have misled the party to whom it was made, but have been intended so to mislead him, or at least there must have been such culpable negligence or carelessness as may be regarded as amounting to an intention to mislead. The same is true when a party, by his silence—which is one mode of making a representation—has misled another as to the matter not communicated. *Taylor* v. *Ely*, 25 Conn. 250. A party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the other. *Cummings* v. *Webster*, 43 Me. 192. If one, having the title to an estate, and knowing it, stand by and see another,

who, ignorant of it, purchases the estate, and suffer him
to improve it under the belief that his title is valid, such
an one is bound by the sale, and cannot invoke the aid of a
court of justice to dispute it. "Standing by" may not
import actual presence, but "implies knowledge under
such circumstances as to render it the duty of the possessor
to communicate." *Galleny* v. *Rodman*, 6 Ind. 280. Equity,
as well as law, will interfere to prevent a party from assert-
ing his own legal title against a third person, who had been
induced by him to part with his money for the estate of
which he was seeking to deprive him. *Story* v. *Barker*, 6
Johns. Ch. 166, and cases there cited. The same rule at law
is stated in *Dinsmore* v. *Ely*, 1 Barb. 620. "*Qui tacet, con-
sentire videtur.*" "*Qui potest et debet vetare, jubet.*" As parties,
the plaintiffs are estopped from setting up their claim here,
as they, by the acknowledgment expressed in their deed,
by the reception of the consideration money there stated,
are thus estopped from setting up title to the same land
for which they have once received their pay. Having par-
ticipated in the profits arising from the sales, the plaintiffs
are not now to be permitted to inquire into the considera-
tion of their deeds, for the purpose of showing an interest
different from or additional to the interest expressed in the
operative words of the conveyance, or to defeat the deeds,
or to change their legal effects. 2 C. & H. Phill. Ev. 1444.
If the owner or claimant of property actively persuades
or encourages another person, who is ignorant of his right,
to purchase the property, or any right or interest in it, he
will not be permitted to claim the property, or any right
in it, against the purchaser, though he was not aware of
his rights. It will be reckoned his fault that he did not
inquire what his rights were. *Wells* v. *Peirce*, 27 N. H.
511.

Applying the law of the above decisions to the facts as
admitted in this case, finding Richardson, first as agent,
afterward as an interested owner, upon two different oc-

casions selling parts of lot nineteen; again, pointing out the line claimed to by the defendants, upon three other occasions, as the true line between lots nineteen and twenty; again, showing the valuable timber then standing on lot nineteen, and urging Chickering, one of the defendants, to cut the timber up to this line claimed to by the defendants, and, after the purchase by him, looking on and seeing him do what he had directed him to do; again, on another occasion, disavowing the line as a freak of the surveyor, which the plaintiffs now claim to be the true one;— all these facts combined should constitute in law an estoppel to the plaintiffs' recovery in this action, and justify the jury in rendering their verdict for the defendants, and the court in confirming it.

*Judgment on the verdict.*