Cheshire,
May 3, 1938.

CHARLES I. HOSMER, INC. *v.* L. P. FEDERICO & SON.

L. P. FEDERICO & SON *v.* CHARLES I. HOSMER, INC.

*Howard B. Lane, Dana B. Jefferson* and *William Herbits* (both of Massachusetts), (*Mr. Herbits* orally), for Hosmer.

*John R. Goodnow* and *Elias Field* (of Massachusetts) (*Mr. Field* orally), for Federico.

BRANCH, J.  In June, 1934, Hosmer entered into a written contract with the town of Hinsdale, whereby he undertook to construct certain sewers in that town.  This contract contained a provision which prohibited the subletting of any part of the work without the written consent of the town.  Thereafter, on or about October 2, 1934, Federico and Hosmer entered into a written contract, hereinafter called the sub-contract, whereby Federico undertook to do certain portions of the work called for by Hosmer's contract with the town.  This sub-contract was not approved in writing by the town and this fact furnishes the basis for Federico's contention that Hosmer had failed to show the legality of the agreement between them.

After Federico had entered upon the performance of the sub-contract, he encountered unexpected difficulties, and on December 18, 1934, he wrote a letter to Hosmer, suggesting, in substance, that the contract between them be abandoned and that Hosmer hire his (Federico's) equipment and such of his men as might be needed for the completion of the work. Within a day or two after this letter was received by Hosmer, the parties had a conversation in regard to their future relations, and upon the terms of this conversation their reciprocal rights depend. Whether it took place by telephone or in Hinsdale was a disputed issue and the parties disagreed as to what arrangements finally resulted.

Federico testified that after the difficulties of the work had been discussed, Hosmer agreed "that he wouldn't hold me under the contract, and I would be relieved of that responsibility and he would take and rent shovels at that figure" ($500 per month) "and I was to urge my men to stay with him and work in the same capacity they had with me."

Hosmer's version of the conversation was as follows: "He said, I'm through. I said, you are not going out leaving me on the job; you have a contract and are going to stay with it. He says, I'm leaving, if you want to take the equipment to complete the job, all right, and when you get through we can have an accounting, but I am out of the contract."

By his verdicts the trial judge obviously adopted Hosmer's version of this transaction and found that the sub-contract was not abandoned by mutual consent as Federico claimed.

In support of their argument that the conclusion of the court was contrary to the weight of the evidence, counsel for Federico place great reliance upon the significance of the correspondence and conduct of the parties following the conversation above described. It is true that Federico's letters are entirely consistent with the claim which he made at the trial. Hosmer's letters contain no express admissions. The most significant thing about them is their silence upon the essential points in dispute. The uncontroverted facts are that Federico's equipment remained on the job and was used by Hosmer in completing the work and that three payments on account of rental thereof were made by Hosmer. It was for the trier of fact to decide what inferences should be drawn from these circumstances. If some of the permissible inferences were favorable to Federico's claim, it cannot be said that they were necessary conclusions from the facts before the court. Whether "the verdict was conclusively

against the weight of the evidence" was a question of fact and "if . . . the trial court's finding was a reasonable one it may not be disturbed." *Wasutskie* v. *Malouin*, 88 N. H. 242, 246. Since the finding of the trial court depended upon debatable inferences deducible from the evidentiary facts, we cannot hold, as a matter of law, that there was error in the order denying the motion to set aside the verdict.

Federico's claim that the sub-contract was unenforceable by Hosmer against him because the consent of the town thereto had not been obtained, is wholly untenable. "A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment." Am. Law Inst., Restatement of Contracts, s. 176; 2 Williston, Contracts, Rev. Ed., s. 422.

*Judgments on the verdicts.*

All concurred.