FLORENCE LEWIS *vs.* H. L. MARSTERS.

York.   Opinion, May 13, 1942.

*Armstrong & Spill* by *Richard H. Armstrong,* for plaintiff.

*Edwin G. Walker,*

*Clarence B. Rumery,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

WORSTER, J.  The case was heard below by the presiding justice, without a jury, upon an agreed statement of facts. Decision was for the plaintiff, and the matter is brought here on the defendant's exceptions.

The plaintiff claims that the exceptions are not properly before us, because the right to take exceptions had not been reserved. But it is too late to raise that point. The bill was allowed by the presiding justice, and the assent of the plaintiff thereto is shown by the "seen and agreed to" memorandum thereon, signed by her attorney. See *Graffam* v. *Casco Bank & Trust Company*, 137 Me., 148, 16 A. (2d), 106.

*Frank* v. *Mallett*, 92 Me., 77, 42 A., 238, and *Stern* v. *Fraser Paper, Limited*, 138 Me., 98, 22 A. (2d), 129, cited by the plaintiff in argument, do not support her contention. In the original case of *Stern* v. *Fraser Paper, Limited*, referred to in the last cited case, and in *Frank* v. *Mallett*, supra, no bill of exceptions was allowed by the presiding justice, and so the point presented here was not involved in those cases.

The defendant's bill of exceptions is properly before us.

Exceptions, however, will not lie to the decision of a presiding justice in a jury-waived case, heard on an agreed statement of facts, if the decision is supported by the agreed facts, or by inferences which may properly be drawn therefrom. But, in the instant case, the defendant contends that, on the facts presented, the decision rendered is erroneous as a matter of law. We think otherwise.

It appears from the agreed statement of facts, when considered in connection with the so-called purchase contract thereto attached and made a part thereof, that on February 5, 1941, the plaintiff, in writing, ordered of the defendant a certain type of a 1941 Chevrolet automobile, for $849, to be delivered on or about June 1, 1941. That contract was accepted by the defendant, in writing, on said February 5th. On the face of the contract, sometimes called an order, there appears the following sentence:

"The front and back hereof comprise the entire agreement affecting the order and no other agreement or understanding of any nature concerning same has been made or entered into."

And, on the back of that order, among other provisions, appears this statement:

"The order on the reverse side hereof is subject to the following terms and conditions which have been *mutually* agreed upon." (The italics are ours.)

This last-quoted statement is followed by provisions covering certain possible contingencies, among which are provisions relative to the allowance to the seller, of commissions, losses and damages, in case the purchaser should fail or refuse to complete the purchase.

On this trade, the plaintiff delivered to the defendant a used 1938 Ford car, at an agreed price of $400. Out of that amount, the defendant paid a finance company $200, covering the balance due it on the Ford. The remaining $200 was credited to the plaintiff on the purchase price of the Chevrolet, leaving a balance due of $649.

On March 20, 1941, in accordance with one of the provisions appearing on the back of the order, the defendant sold the Ford for $350, for which he received $150 in cash and a 1937 Ford which he afterward sold for $250.

On April 19, 1941, the defendant was informed by the plaintiff that she could not purchase the Chevrolet. Thereupon the defendant promised her, in substance, that he would turn over to her the proceeds received from the sales of both the Fords, after deducting therefrom the cost of repairs, the amount paid the finance company, and his commissions, computed at a certain amount then stated. This left a balance due the plaintiff of $154.88, and, on April 29, 1941, pursuant to said promise, the defendant caused a check for $100 to be delivered to the plaintiff, on which appeared the following marginal notation:

"A portion of credit she had toward new car leaving a balance of 54.88."

This action is brought to recover the last mentioned balance of $54.88.

The defendant contends, in substance and effect, that the plaintiff cannot recover, because, he says, the promise of the defendant, relied upon by the plaintiff, was without consideration and void. That contention cannot be sustained. Undoubtedly the contract was completed when the defendant accepted the plaintiff's order. Thereupon the plaintiff became bound to purchase the Chevrolet upon the terms and conditions stated in the order, subject to the provisions on the back thereof, upon which the parties had mutually agreed; and the defendant, by his acceptance, impliedly agreed to sell and deliver the Chevrolet to the plaintiff upon the same terms and conditions, and subject to the same provisions.

For "a seller who takes a written order or agreement to buy, thereby not only assents to receive the buyer's promise, but also impliedly agrees to sell." 1 Williston on Contracts, revised edition, sec. 90, page 254.

But at the time the plaintiff informed the defendant that she could not purchase the Chevrolet, and at the time he made the promise relied on here, the purchase contract was executory on both sides. The plaintiff had yet to pay the balance due, and, upon payment thereof at the appointed time, the defendant would be required to complete the performance of his part of the contract by delivering the Chevrolet to her.

Parties to a contract which has not been fully performed on either side, may rescind it by mutual consent. 12 Am. Jur., sec. 409, page 988.

This right of rescission is entirely distinct from the right of one of the parties to a contract to rescind it for cause, against the consent of the other, and from the right to rescind it pursuant to some provision in the contract. 17 C. J. S., sec. 386, page 878; *Ogg* v. *Herman et al.*, 71 Mont., 10, 227 P., 476.

A rescission, by mutual consent, of a contract which is still executory on both sides, constitutes a new contract, supported by a sufficient consideration, for "the release of one is sufficient consideration for the release of the other." *Savage Arms Corporation, Appt.* v. *United States*, 266 U. S., 217, 69 Law ed.,

253, 46 S. Ct., 30 and cases there cited; 12 Am. Jur., sec. 409, page 988; 17 C. J. S., sec. 391, page 883.

Whether or not such an executory contract has been rescinded by mutual consent is a question of fact which need not be proved by express terms, but may be inferred from the attendant circumstances and the conduct of the parties. 6 Williston on Contracts, revised edition, sec. 1826; *Wheeden* v. *Fiske et al.*, 50 N. H., 125; see, also, note 74 Am. Dec., 657.

What, then, is the fair inference to be drawn from the attendant circumstances and the conduct of the parties in the instant case?

It must be borne in mind that the Chevrolet was not to be delivered until on or about June 1, 1941, and then it was to be delivered as a cash sale. There is no evidence of breach of contract by the plaintiff, or of any refusal on her part to complete the purchase, unless the statement made by her to the defendant in April of that year, to the effect "that she could not purchase the" Chevrolet can be so construed. But it is unnecessary to determine the legal effect of that statement as of that time (see *South Gardiner Lumber Company* v. *Bradstreet et al.*, 97 Me., 165, at page 172, 53 A., 1110) for it is plainly indicated by the very terms of the settlement made by the parties during that April that they did not adjust their differences on the basis of a breach of contract or refusal of the plaintiff to complete the purchase. None of the contractual provisions applicable in such events were complied with. They were utterly ignored by the parties. Nothing was allowed to the defendant for any alleged losses or damages, and even the commissions agreed upon for selling the Fords were less than he would have been entitled to receive under the contract, if it had been terminated through the fault of the plaintiff. Since none of these contractual provisions were followed and complied with, it is but fair to infer, in the light of the record as a whole, that the parties did not agree to settle on the basis of a breach of contract or refusal of the plaintiff to complete the

purchase. The settlement not having been made on either of those grounds, the inference is that, for reasons best known to themselves, the parties rescinded their contract by mutual consent, while it was still executory on both sides, and, by agreement, endeavored to place each other as nearly in statu quo as could possibly be done in the changed circumstances in which they found themselves, as they had a perfect right to do.

A rescission by mutual consent, of an executory contract not fully performed on either side, may properly include an undertaking by either or both parties to make restitution, as a part of the contract of rescission. See 6 Williston on Contracts, revised edition, sec. 1826, supra; See, also, Restatement of the Law of Contracts, sec. 409.

Therefore, the promise of the defendant, as a part of their valid contract of rescission, that he would turn over to the plaintiff the proceeds received from the sales of the Fords, less the deductions above mentioned, was supported by a sufficient consideration, and this action is maintainable. There was no error in the decision of the presiding justice.

Cases applicable to substituted or modified contracts under which other and different obligations were assumed by the parties, are not in point. In such cases a contract to be performed still continues to exist, but in a changed form. Here the contract, having been rescinded, no longer exists.

The conclusion at which we have arrived renders it unnecessary to analyze and discuss the authorities cited in the defendant's brief.

The provisions on the back of the order, relative to the rights of the defendant in case the plaintiff failed or refused to complete the purchase, were rendered nugatory by the rescission, by mutual consent, of the executory contract of which they were a part.

*Exceptions overruled.*