Cheshire,
No. 5494.

HERBERT E. YOUNG *v.* VIVIAN BARRY *& a.*

Argued June 7, 1966.
Decided June 30, 1966.

*Brighton, Fernald & Taft ( Mr. Richard R. Fernald* orally ), for the plaintiff.

*Cleveland, Waters & Bass ( Mr. Robert P. Bass, Jr.* orally ), for the defendants.

DUNCAN, J. Commencing in the fall of 1962 the defendants undertook to convert a part of a farmhouse and adjoining ell and a barn, into a nursing home, at a cost which eventually approximated $100,000. The plaintiff was employed in November to do the electrical work, as the Court found, " on the basis of cost of materials, plus ten per cent, plus labor. " By late April 1963, three bills totaling $4,077.31 were paid by the defendants upon presentation.

Thereafter the plaintiff did additional work for which he billed the defendants on September 7, 1963 in the sum of $5,291.10. Against this charge the defendants paid the plaintiff $1,800, which

they claimed was the sum for which the plaintiff contracted in the preceding April to finish the electrical work.

The plaintiff testified, and the Court by implication found, that his figure of $1,800 was an estimate of the cost of completing the " bare necessities " so that the home might be opened in June 1963. The Court denied the defendants' request for a ruling "that there was a contract . . . whereby Young was obligated to complete the basic electrical work for a price not to exceed $1,800 " and found as follows: " On all the evidence the Court finds that the cost of the materials furnished by the plaintiff after the late April or early May conversation was $2,916.10 . . . that the labor performed in some instances, related to non - electrical work; and that there was additional electrical work and electrical materials furnished by the plaintiff, not included in the estimate of $1,800; and a change in the electrical fixtures by the defend - ants; and that the September 7, 1963 bill was for materials, plus 10%, plus labor, furnished by the plaintiff. "

It was not disputed that the plaintiff's work was done in workmanlike fashion, and that the materials were satisfactory, although the defendants complained that the work was not fully completed. Their contention is that their liability is confined to a contract price of $1,800, plus the fair value of extras which were not within the contract price; and that the plaintiff has failed to establish that the unpaid balance of the last bill rendered repre - sented the fair value of the extras.

The plaintiff's evidence warranted the finding of the Trial Court that the $1,800 figure discussed by the parties was merely an estimate. It was findable that after this conversation, the defend - ants decided not to restrict the work to " bare necessities " but to go ahead with the " rest of the frills, " finish the work in the way they eventually wanted it, and pay for it with funds originally allocated to construction of a swimming pool. If the Court accepted the plaintiff's testimony that the plan to install only bare necessities was abandoned by the parties, it could properly rule in accordance with the plaintiff's assertion that the agreement of the parties remained one for materials plus ten per cent plus labor.

The defendants rely upon certain testimony of the plaintiff, as an admission that there was a contract: his testimony that he " promised " to do the essential work for a figure not to exceed $1,800, and his use on cross - examination of the expression:

"As soon as they *broke this contract* . . . I went ahead . . . and followed on the old basis . . . when we started doing all these extras they wanted." (Emphasis supplied). It could be found however that when the plaintiff referred to a breaking of the contract, he meant no more than abandonment of the proposal discussed in April, that he should install merely the "bare necessities."

In the light of the evidence, the issue of whether or not a contract for $1,800 was made in April was not controlling. If the figure was merely an estimate, it could be found that the work thereafter done was carried on with mutual disregard for the type of installation upon which the estimate was based. If the figure was intended to be a firm contract price when discussed, the evidence warranted a finding that the contract was later abandoned by mutual consent. Restatement, Contracts, *s.* 406, *comment* b; 6 Williston, Contracts (Rev. *ed.*) *s.* 1826; 5A Corbin, Contracts, *s.* 1236, *p.* 542. As was said in *Wheeden* v. *Fiske*, 50 N. H. 125, 129, "in view of the character, importance, and expense of these alterations from the original plan, there was abandonment and competent evidence from which the jury would be at liberty to find a rescission of the original special contract, if there ever was such a contract." If such a finding were made, then it would follow that the plaintiff became entitled "to charge by measure and value for the work done, as if no contract had been made." *Id.*, 128. See also, *Osborn* v. *Stevens*, 132 Conn. 410; *Lewis* v. *Marsters*, 139 Me. 17; *Schwartz* v. *Shelby Construction Co.* (Mo.), 338 S. W. 2d 781.

Since the record discloses no error of law, the order is

*Judgment on the verdict.*

All concurred.