Nashua District Court
No. 7260

JAMES DRYWALL, INC.

v.

EUROPA DEVELOPMENT CORPORATION & a.

October 29, 1976

*Winer, Lynch, Pillsbury & Howorth (Mr. Robert W. Pillsbury* orally) for the plaintiff.

*Upton, Sanders & Smith* and *Gary B. Richardson (Mr. Richardson* orally) for the defendants William and Elinor Richey.

KENISON, C.J.    This is an action in assumpsit to recover $1,617 for goods and services supplied by the plaintiff to Europa Development Corporation and to assert a mechanic's lien against the premises now owned by William and Elinor Richey. A trial before *Harkaway,* J., resulted in a verdict against Europa and a finding that the property of defendants Richey is liable for satisfaction of the debt claimed. The Richeys seasonably excepted to the denial of their motions to dismiss, of their requests for findings of fact and rulings of law, and to the decision of the court. All questions of law raised by the foregoing exceptions were reserved and transferred.

On October 30, 1972, Europa Development Corporation, now defunct, purchased a tract of land in Bow, New Hampshire. Thereafter, Europa divided the tract, built houses on several of the lots including lot 79 which is the subject of this action. The house on lot 79 was built with the intention of selling it to some prospective buyer. On April 4, 1974, William and Elinor Richey

entered into a purchase and sale agreement for the purchase of said lot. This agreement was not recorded in the registry of deeds. As of that date, the plaintiff, James Drywall, Inc., had not furnished any materials or labor on the premises and did not do so until April 30, 1974. Although the date of closing was to be May 3, 1974, construction delays postponed closing until June 17, 1974. On that date, the Richeys took title to and possession of the property. At the time of closing, the Richeys had no knowledge of the plaintiff's claim for a lien but did have knowledge that the plaintiff had done the drywall work in the house. At closing, Europa Development Corporation represented both orally and by signed affidavits under oath that all subcontractors had been paid in full. The plaintiff did not know that the Richeys had signed an agreement to purchase the property, although Mr. Richey visited the premises every day during the performance of the work by plaintiff's employees. On August 8, 1974, the plaintiff attached the property in order to satisfy its mechanic's lien pursuant to RSA 447:10.

In this case we are called upon first to interpret the meaning of the statutory language denying district courts jurisdiction in cases in which "the title to real estate is . . . involved . . . ." RSA 502-A:14 (Supp. 1975). The plaintiff argues that the district court had jurisdiction in this case because a suit to enforce a mechanic's lien does not involve the title to real estate. We agree that the enforcement of a mechanic's lien does not by itself sufficiently involve title to realty so as to preclude district court jurisdiction. Annot., 115 A.L.R. 504, 539-40 (1938). A mechanic's lien is not an estate or an interest in land. *Gau v. Hyland,* 230 Minn. 235, 41 N.W.2d 444 (1950); *Bell v Dennis,* 43 N.M. 350, 93 P.2d 1003 (1939); *Penn Mut. Life Ins. Co. v. Finkel,* 428 Pa. 11, 235 A.2d 396 (1967); *Bankers Home Bldg. & Loan Ass'n v. Wyatt,* 139 Tex. 173, 162 S.W.2d 694 (1942). It is not the equivalent of title to property, *Sullivan v. Wellborn,* 32 Cal. 2d 214, 195 P.2d 787 (1948); *Mills v. Reneau,* 411 P.2d 516 (Okla. 1965), nor evidence of ownership. *Mapledge Corp. v. Coker,* 167 Neb. 420, 93 N.W.2d 369 (1958). A lien proceeding is an attempt to obtain payment of a debt which may be satisfied out of specific property of the debtor. *See Allen v. Texaco, Inc.,* 510 F.2d 977 (5th Cir. 1975). Thus, in a typical suit to enforce a lien, title to the land is not put in issue by either party.

In this case, however, the Richeys do assert their title to the land as a defense to the lien. They argue that the nature and extent of their interests in the land at the time plaintiff com-

menced work will determine the enforceability of the plaintiff's statutory lien for services it performed. Specifically, their position is that, if they were "owners" within the meaning of RSA 447:5, which requires subcontractors to give owners notice of liens, the plaintiff's lien is invalid because no notice was given to them. Because, under the defendants' theory, plaintiff's recovery depends upon whether the defendants owned the property, defendants argue that the case involved the title to real estate within the meaning of RSA 502-A:14 (Supp. 1975) and that therefore the district court had no jurisdiction.

In support of their position, defendants Richey rely upon *Blevens v. New England Tel. & Tel. Co.,* 116 N.H. 247, 356 A.2d 696 (1976). That case, however, is distinguishable. *Blevens* was an action to recover rent for the maintenance of defendant's guy wire and stub pole that ran across the plaintiff's land. The telephone company claimed that it had an easement in the land and that no rent was due. So far *Blevens* and the instant case are indistinguishable. In each, the defendant's title or an incident thereof is a defense to the plaintiff's .laim. At this point, however, the similarity ends. In *Blevens,* the plaintiff could not recover unless *his* title was superior to the defendant's. If the plaintiff's title was encumbered, he could not recover.

Ostensibly, *Blevens* was a rent case. However, the central and predominant issue was the title of the parties *inter se.* In contrast, the state of plaintiff's title is irrelevant in the instant case. The dispute is not over who had better title as between the parties but whether the defendant had an interest in the land sufficient to enable him to defeat the plaintiff's lien. Thus this case does not involve title to real estate in the same manner as *Blevens* and the district court's exercise of jurisdiction was proper. *See Pine Lawn Bank & Trust Co. v. Urbahns,* 417 S.W.2d 113 (Mo. Ct. App. 1967) (question of right to lien on land does not involve title to real estate within meaning of constitutional provision giving supreme court exclusive appellate jurisdiction of that issue); Annot., 115 A.L.R. 504, 540 (1938).

We now turn to the merits. The creation and perfection of mechanics' liens are controlled by RSA ch. 447. Only sections 2 and 5 are relevant in this case.

RSA 447:2 applies to those lienors who contract directly with the owner of the property on which the work is performed. The provision does not require such contractors to notify owners of lien claims. In contrast, RSA 447:5 does require that the lienor

notify the owner. But this requirement applies only to sub-contractors, that is, those who "contract with an agent, contractor or sub-contractor of the owner." RSA 447:5. Requiring only sub-contractors and others who do not directly contract with the owner to serve notice is common in American mechanic's lien law. Annot., 50 A.L.R.3d 944, 955 (1973). Thus, whether a lien is valid often depends upon the characterizations of the parties involved. Unfortunately, the statute does not define the terms "owner," "contractor" and "sub-contractors".

The Richeys take the position that they are "owners" within the meaning of RSA 447:5, that therefore they were entitled to notice of the impending lien and that, because the plaintiff Drywall, Inc. failed to give them notice, its lien is unenforceable. The Richeys' status as "owners" rests upon the conclusion that, by virtue of their signing a purchase and sale agreement on April 4, 1974 to buy the lot and house from the Europa Development Corporation, they became the equitable owners of the property on that date. Thereafter, Europa held bare legal title. Thus, the Richeys ask this court to read "owners" in RSA 447:5 broadly so as to include those who have equitable interests in the property — in this case executory vendees under a purchase and sale agreement for improved land.

However, in order for the Richeys to prevail, we must not only characterize them as "owners," but we must also regard Europa, the vendor, as a "contractor." Only if Europa is a "contractor" can Drywall, Inc., who contracted with Europa, be regarded as a "sub-contractor" who must notify the owner in order to perfect his lien. Thus, in summary, the Richey defendants would have us characterize them as owners, Europa as contractor and Drywall as subcontractor. Under this interpretation of the facts, Drywall's failure to notify the Richeys would be fatal to its case.

The problem of characterizing the parties in mechanic's lien cases is not novel. *See, e.g., Chagnon Lumber Co. v. Annis,* 98 N.H. 467, 102 A.2d 916 (1954). Because most States do not require original contractors to notify owners with whom they are in privity, Annot., 50 A.L.R.3d 944, 955 (1973), the question whether the lien affects the interest of the executory vendee may often depend upon whether the lienor is a subcontractor or an original contractor and upon whether the vendor is regarded as the owner of the property or as a contractor for the vendee.

"Since most courts hold that the vendor is the owner of the property within the meaning of the mechanic's lien laws, such courts also hold that a contract with the vendor is a contract with the owner and the statutes do not require the serving of any notice upon the vendee or upon the vendor, even though the lien is filed after the executory vendee obtained record title. Thus, a vendor builder who agreed to sell a lot and construct a house thereon for the vendee and deliver a deed upon full payment of the purchase price [does] not change his position from that of owner to that of principal contractor for the vendee where he did not agree to sell the lot and then build a house but agreed to sell the improved lot when the house was completed and the full purchase price paid." Annot., 50 A.L.R.3d 944, 956 (1973).

In order to determine the status of the parties we must review the facts of this case. Europa purchased the land and began building the house long before contracting with the Richeys. Thus, this is not a case in which the Richeys contracted to build a home on a lot they already owned. They agreed to buy both the land and the house for a single sum when the house was completed. The Richeys were not in possession of the land during the construction. Finally, record title was in the vendor Europa Development Corporation. These factors are relevant in determining whether the vendor is the owner or the contractor for the purposes of mechanic's lien laws. Annot., 50 A.L.R.3d 944, 947 (1973). The facts here permit only one conclusion: Europa was the owner at all times prior to the closing. It did not become a contractor merely by signing a purchase and sale agreement. Thus, Drywall, Inc. was the contractor and as such did not have to give notice to the Richeys. *Oklahoma Hardware Co. v. Townsend,* 494 P.2d 326 (Okla. 1972). Defendants rely upon *Hessinger v. Sorenson,* 180 N.W.2d 910 (N.D. 1970). In that case, however, the court noted that North Dakota's statute defines "owner" as someone other than the mere holder of legal title. Thus, the equitable interest of the executory vendee qualified him as "owner" under the terms of North Dakota's unique statutory scheme.

The defendants also rely upon several old New Hampshire cases in which equitable owners of property defeated certain lienors. The strongest case for the defendants is *Marston v. Stickney,* 60 N.H. 112 (1880), in which a son purchased a lot for his

mother with her money but took the deed in his own name. After moving into an old house on that property, she advanced funds to her son to build a new house for her. Marston contracted with the son to do certain work. He believed at all times that the son was the owner of the premises. The court, however, did not hold in favor of Marston, the lienor. It noted that the mother "was in open, visible, exclusive, and unambiguous possession at the time the contract with the plaintiffs was made, and while the house was being built. Her possession was in law notice of her equitable interest, and a creditor of [her son] could not hold the land as against her." *Id.* at 113. *Marston* is clearly inapposite. First, the case involves a resulting trust, not a development company selling a partially constructed house to an arms length purchaser. Second, and more important, in *Marston* the equitable owner was in full and open possession thereby giving the lienor notice of her interest.

In the instant case, the Richeys were not in open possession of the property. Their routine inspection of the premises during the time when plaintiff's employees were on the site did not put Drywall, Inc. on notice that the Richeys had an equitable interest in the land. To hold otherwise would put an undue burden upon mechanic lienors. They would have to ascertain who, if anyone, held interests in the property, including unrecorded interests. Surely, the law does not impose upon lienors the duty to ascertain whether people who visit construction sites are the equitable owners of the property. The practical difficulties of such a burden account for the numerous holdings that, when a lien claimant's rights turn upon who is an "owner," the state of the record at the registry of deeds at the time of contracting will control. In the absence of actual or constructive notice of a change therein, a lien claimant is entitled to rely upon the title as it stood at the time the contract for the improvement was made. *See Sturdavant v. First Ave. Coal & Lumber Co.,* 219 Ala. 303, 122 So. 178 (1929); *Shryock v. Hensel,* 95 Md. 614, 53 A. 412 (1902); *Leverenz Lumber & Bldg. Co. v. Rickels,* 251 Mich. 57, 231 N.W. 112 (1930); *Duitman v. Liebelt,* 17 Wis. 2d 543, 117 N.W.2d 672 (1962).

*Exceptions overruled.*

Bois, J., did not sit; the others concurred.