Strafford
No. 7516

EUGENE F. NUTE, ADMINISTRATOR,
ESTATE OF JUNE MCKEAGE

v.

GEORGE BLAISDELL
AND
HAZEL BLAISDELL

MAHALA WILLEY

v.

GEORGE BLAISDELL
AND
HAZEL BLAISDELL

March 31, 1977

*Bruce A. Whitney,* of South Berwick, by brief and orally, for the plaintiff Eugene F. Nute, Administrator, Estate of June McKeage.

*McLane, Graf, Greene, Raulerson & Middleton,* of Manchester, and *Stephen J. Selden* and *James R. Muirhead (Mr. Muirhead* orally) for the defendant George Blaisdell.

*Devine, Millimet, Stahl & Branch,* of Manchester (*Mr. Shane Devine* orally) for the defendant Hazel Blaisdell.

DOUGLAS, J. This is an action in assumpsit and by alternative pleadings, fraud and violation of a fiduciary relationship, to recover damages arising out of a loan allegedly made by the deceased plaintiff, June McKeage, to the defendants, George Blaisdell and Hazel Blaisdell. This action was consolidated and tried with the case of *Mahala Willey v. George Blaisdell and Hazel Blaisdell,* in which the court rendered a verdict for defendants. Plaintiff Willey has not appealed.

Trial by the court resulted in a verdict for the plaintiff in the amount of ten thousand three hundred and one dollars and fifty-six cents ($10,301.56).

During the course of the trial, the defendants seasonably excepted to the denial of their motions for a nonsuit and directed verdict, and to certain rulings of the court admitting and excluding evidence. Defendants further excepted to the denial of their

motions to set aside the verdict. These and all other exceptions were reserved and transferred by *Dunfey*, J.

We hold that the court committed no error in finding a contract of loan between the decedent and the defendants, in finding fraud and violation of a fiduciary relationship by the defendants, and in admitting the hearsay statements of the decedent pursuant to RSA 516:25.

Hazel and George Blaisdell are respectively, mother and son. They first met June McKeage in 1969 when the latter was operating a home for the elderly in East Rochester, New Hampshire.

In June of 1970, George Blaisdell entered into a purchase and sale agreement with Dr. and Mrs. Joseph Britton for the purpose of purchasing their property and buildings at 125 Charles Street in Rochester, New Hampshire.

In October of 1970, the mortgage on the East Rochester nursing home owned by June McKeage was foreclosed. Although no written lease was produced at trial, June McKeage and the Blaisdells made arrangements for June to run her home for the elderly at the Charles Street location.

In early November of 1970, George Blaisdell, who undertook to assist June in obtaining funds which she needed, first met Mahala Willey in the Frisbie Hospital to see if she would cosign and provide security for a loan June McKeage was seeking to conduct her business. Mahala Willey eventually agreed to provide these funds, using certain of her bankbooks as collateral for the purposes of the loan. The loan arrangements were completed on December 28, 1970, when June McKeage borrowed $10,000 from the Granite State Savings Bank. This loan was immediately converted to cash, received in bank wrappers. Since McKeage was unable to drive herself, George Blaisdell was with her at all times during her loan negotiations and acted "like an agent."

The next day, George Blaisdell presented $12,953.35 in cash to the Brittons' lawyer, thus closing the sale of the 125 Charles Street property. Ten thousand dollars of this cash was presented in bank wrappers.

Eight days after the closing, June McKeage returned with George Blaisdell to the bank and procured a second loan of $5,200, this loan also having been secured by the pledged collateral of Mahala Willey. This loan was also converted to cash.

After the nursing business was moved to 125 Charles Street in late December of 1970, Mahala Willey visited McKeage on several

occasions. On one visit, June McKeage volunteered the information that she had received only $800 out of the total amount borrowed and that George Blaisdell had taken the other $15,000, bought the house at 125 Charles Street and put the home in his mother's name.

Prior to the admission into evidence of these statements allegedly made by the decedent to Mahala Willey, counsel for the defendants objected on the grounds of hearsay. The court overruled the objection on the basis of RSA 516:25.

■ RSA 516:25 provides that "In actions, suits or proceedings by or against the representatives of deceased persons . . . any statement of the deceased, whether oral or written, shall not be excluded as hearsay provided that the judge shall first find as a fact that the statement was made by decedent, and that it was made in good faith and on decedent's personal knowledge." "One . . . obvious purpose of this statute . . . [is] to prevent injustice to the estates of deceased persons by permitting an executor in certain circumstances to give the deceased's version of a disputed transaction. *Yeaton v. Skillings,* 100 N.H. 316, 319 (1956)." *Sullivan v. Dumaine,* 106 N.H. 102, 106, 205 A.2d 848, 851 (1964).

■ In the case of *Piper v. Fickett,* 113 N.H. 631, 312 A.2d 698 (1973), we held that where a trial court admits the statements of a deceased, the trustworthiness standards of RSA 516:25 must have been implicitly found. If the court finds that the statement of the deceased (a) was not made by the decedent; (b) was not made in good faith; or (c) was not made on decedent's personal knowledge, it is excluded. *Sullivan v. Dumaine supra* at 106, 205 A.2d at 851. Here the record supports admission of the evidence despite the lack of explicit findings. Although the statements in the instant case were received informally, we find no error in their final admission by the presiding judge, nor can we say his findings were plainly wrong. *Hardware Mut. Cas. Co. v. Hopkins,* 106 N.H. 412, 213 A.2d 692 (1965). We note, however, that a better practice would be for trial judges to make on the record explicit findings under the statute prior to admitting the statements into the case in chief.

■ Defendants also assert that the evidence was insufficient to establish a contract between the decedent and the defendants. Although discrepancies appear on the record as regards the existence of any form of contract, "the existence and terms of the contract are questions to be resolved by the trier of facts who may accept

or reject in whole or in part any testimony of the parties." *O'Donnell v. Cray*, 109 N.H. 223, 225, 248 A.2d 83, 84 (1968).

■ Defendants further excepted to the denial of their motions for a nonsuit and to set aside the verdict contending that the evidence was insufficient to establish fraud and violation of a fiduciary relationship owed to the decedent. "Since the finding of the trial court depended upon debatable inferences deducible from the evidentiary facts, we cannot hold, as a matter of law, that there was error in the order denying the motion to set aside the verdict." *Hosmer v. Federico*, 89 N.H. 378, 380, 199 A. 567, 568 (1938).

■■ Defendant Hazel Blaisdell asserts that the court erred in its award as against her. To entitle one to restitution, it must be shown that there was unjust enrichment either through wrongful acts or passive acceptance of a benefit that would be unconscionable to retain. Restatement of Restitution § 1 (1937); *Brereton Estate*, 388 Pa. 206, 130 A.2d 453 (1957). In the instant case, Hazel Blaisdell's role concluded with the title to the property being placed in her name without the corresponding liability for the purchase price. The trial court could reasonably conclude that the defendant Hazel Blaisdell was unjustly enriched.

*Exceptions overruled.*

GRIMES, J., did not sit; the others concurred.