Belknap
No. 80-505

CONCRETE CONSTRUCTORS, INC.

v.

HARRY SHAPIRO & SONS, INC. *& a.*

October 7, 1981

*Robert L. Hemeon*, of Laconia, by brief and orally, for the plaintiff.

*Stanley, Tardif & Shapiro*, of Concord (*R. Peter Shapiro* on the brief and orally), for the defendant.

PER CURIAM. The questions to be decided in this case are whether the Master (*Robert A. Carignan*, Esq.) erred in dismissing the plaintiff subcontractor's petition for a mechanics lien under RSA ch. 447, in denying the plaintiff subcontractor a right to recover payment for work, services, and material under a theory of unjust enrichment, and in finding that the defendants are not liable to the plaintiff subcontractor for any claim arising out of the subcontract between the plaintiff subcontractor and the general contractor. The master's report was affirmed by *Batchelder*, J. We affirm in part.

The defendant Harry Shapiro & Sons, Inc. (Shapiro) owned a tract of land on Loudon Road in Concord, New Hampshire. In February, 1979, Shapiro entered into a contract with defendant Cate Enterprises, Inc. (Cate), which required Shapiro to construct a building on that Loudon Road land and lease it to Cate for a period of twenty years. Shapiro's limit on construction costs was $260,000. Cate was to be responsible for all construction costs in excess of that amount "for whatever reason."

Shapiro engaged Cormier Construction Corporation (Cormier) to erect the building, and work was started on the project. In April, 1979, the plaintiff Concrete Constructors, Inc. (Concrete) entered into a subcontract with Cormier to supply certain labor and materials on the job for the sum of $9,000.

Cormier was unable to secure a performance bond, and work was halted in April, 1979. Consequently, the plaintiff only partially performed under the subcontract and was paid $2,444 by Cormier. Cormier and Shapiro entered into a release and indemnity agreement which certified that no subcontractors, other than Concrete, had been committed to the project. Cormier agreed to release all claims against Shapiro except those of the plaintiff, and the plaintiff's subcontract with Cormier was assigned to Shapiro.

Subsequently, Cormier brought suit against Shapiro in Merrimack County Superior Court. Inexplicably, Shapiro, in its pleadings for that suit, claimed to have hired a new general contractor, but this may have been an error in pleadings.

In fact, Shapiro and Cate renegotiated their agreement, and under this new agreement Cate agreed to take on the responsibility of constructing the building, while Shapiro agreed to furnish $260,000 in capital, the same amount that it had committed in their first agreement.

Counsel for Shapiro formed the defendant Sciarra Corporation (Sciarra), a New Hampshire corporation, for Gerald Sciarra of Connecticut, who was the "sole director" of Sciarra Corporation. Although Gerald Sciarra was associated with Arbor Contractors of Hartford, Connecticut, Arbor did not participate in this construction. In May, 1979, Cate hired an architect, and engaged Sciarra to construct the building.

On May 7, 1979, the plaintiff agreed to perform the same work for Sciarra that he had agreed to do under the original agreement with Cormier, for a new price of $19,335. The plaintiff completed his subcontract and was paid $11,833 by Sciarra. The final invoice for the balance of monies due Concrete from Sciarra was dated July 23, 1979, amounting to $7,250, the balance of the contract price, plus $252, expenditure for additional concrete, for a total undisputed amount of $7,502. This amount was never received by Concrete.

■ Shapiro complied with the terms of the second agreement with Cate and contributed $260,000 to the building Shapiro owns and leased to Cate. Payments of the $260,000 were to be made to Cate by Shapiro "either directly to the subcontractor if Mr. Sciarra requested it or . . . to Mr. Sciarra's corporation himself. . . ." The $260,000 from Shapiro was disbursed by Cate's architect to Sciarra directly in approximately nineteen payments, the last of which was disbursed by August 17, 1979. Cate paid an additional sum of $15,000 to Sciarra for a total payment of $275,000. The master found that Sciarra did not complete the job according to

the contract of May, 1979, and that additional funds had to be expended for completion. Concrete, not being fully paid at this time, brought suit against Shapiro and against Cate.

The master found that:

> "[T]here was no evidence that Shapiro consciously assumed the contract Cormier had with the plaintiff. The evidence is to the contrary, as the plaintiff entered into a new contract over the same subject matter, at a greater price, with a new contractor. It is unreasonable to assume that the plaintiff didn't know Cormier was out when it renegotiated its new deal with Sciarra."

The master further determined that the assignment of Cormier's contract with Concrete to Shapiro was never enforced. We agree. The plaintiff, by contracting for the same services with a new contractor, Sciarra, effectively waived the assignment of the original subcontract. *See Young v. Barry*, 107 N.H. 294, 296, 220 A.2d 735, 736 (1966); *Wheeden v. Fiske*, 50 N.H. 125, 129 (1870).

■ The master ordered the mechanics lien Concrete had obtained, in an ex parte proceeding, on Cate's leasehold removed. We agree with this order. The plaintiff, Concrete, did not notify the owner in writing as is required by RSA 447:5. The plaintiff argues that Shapiro was the record owner of the property and for that reason Concrete had no knowledge of Cate's interest. This argument might be viable if Concrete had properly notified Shapiro, *see James Drywall, Inc. v. Europa Development Corp.*, 116 N.H. 619, 625, 365 A.2d 1047, 1052 (1976), but the facts indicate that Concrete did not so notify Shapiro. Therefore, Concrete is not entitled to a mechanics lien on the property. *See Westinghouse Electric Supply Co. v. Electromech, Inc.*, 119 N.H. 833, 838, 409 A.2d 1141, 1143–44 (1979); *Boulia-Gorrell Lumber Co. v. East Coast Realty Co.*, 84 N.H. 174, 177, 148 A. 28, 30 (1929).

■■ The plaintiff's claim of unjust enrichment likewise fails. Neither defendant Shapiro nor defendant Cate is holding any sums not expended, and neither defendant profited or became enriched at the expense of the plaintiff. *See Cohen v. Frank Developers, Inc.*, 118 N.H. 512, 518, 389 A.2d 933, 936–37 (1978). The defendants received no benefit that would be unconscionable to retain. *See Nute v. Blaisdell*, 117 N.H. 228, 232, 374 A.2d 923, 925 (1977).

The master found:

> "that no representative of Shapiro ever contacted the plaintiff and guaranteed payment as owner of the prop-

erty. There is no evidence that the plaintiff, prior to April 30, 1979, contacted representatives of either defendant Shapiro or Cate to determine their direct or indirect responsibility to Cormier, nor did the plaintiff receive guarantees of payment by either defendant. The evidence is undisputed that Shapiro never had any contract negotiations with Sciarra Construction Co., Inc. or the plaintiff after April 27, 1979, the date of the Indemnity Agreement."

We agree with these findings, and therefore we affirm the master's order that the defendant Shapiro is not liable for Concrete's claim. The peculiar facts of this case, however, warrant our granting relief to the plaintiff Concrete against defendant Cate.

While the master properly attributes knowledge of Cormier's withdrawal to the plaintiff, he fails to accord that same degree of knowledge to Cate. Cate knew of the plaintiff's subcontract with Cormier and knew that the plaintiff had not been paid in full by Cormier as indicated by paragraph 3 of the release and indemnity agreement. Cate knew that Cormier, the general contractor, was not financially strong, as indicated by its failure to obtain bonding. Cate also can be assumed to have known that Sciarra, a corporation of one person, presumably formed solely for this contract, was not in a strong financial position. Furthermore, the contract between Cate and Sciarra did not require Sciarra to obtain a bond and stated that if a bond were ever necessary, Cate would pay for it. There is no evidence that Sciarra ever obtained bonding. Yet, Cate through Shapiro made payment of $260,000 and Cate paid an additional $15,000 directly to Sciarra without any inquiry into the subcontractor's claim.

Ordinarily an owner would not bear the burden of such an inquiry. In this case, however, the owner is estopped to deny the legitimate invoice of a subcontractor who has not been paid the undisputed amount of his claim for labor and materials; we so hold because the owner, with fresh knowledge of the failings of a first general contractor to a subcontractor and with the means available to protect the subcontractor, failed to inform himself of the failings of a second contractor selected by him who utilized the same subcontractor.

An estoppel may arise under certain circumstances from silence or inaction as well as from words or actions. *See Town of Nottingham v. Lee Homes, Inc.*, 118 N.H. 438, 442, 388 A.2d 940, 942 (1978) (quoting *Monadnock Regional School Dist. v. Fitzwil-*

*liam*, 105 N.H. 487, 491–92, 203 A.2d 46, 49–50 (1964)); *Margolis v. Insurance Co.*, 100 N.H. 303, 308, 125 A.2d 768, 772 (1956). Estoppel by inaction generally encompasses any silence when there is knowledge and a duty to make a disclosure. *Richardson v. Chickering*, 41 N.H. 380, 385–86 (1860). In this case Cate, with knowledge of Concrete's subcontract and Sciarra's financial position, not only failed to make a disclosure, but actually acted to Concrete's detriment by making direct payments to Sciarra, resulting in the nonpayment of the subcontractor Concrete, and by failing to require Sciarra to post a bond which might have protected Concrete. *Cf. Naylor Pipe Co. v. Murray Walter, Inc.*, 120 N.H. 696, 698, 421 A.2d 1012, 1013 (1980).

■■ Whether to apply the doctrine of estoppel rests on the facts and circumstances of each case. *Monadnock Regional School Dist. v. Fitzwilliam*, 105 N.H. 487, 489, 203 A.2d 46, 48 (1964). Given the peculiar facts of this case, when the defendant Cate knew of the relationship between the contractor and the subcontractor, had a contractual obligation to pay all expenses for construction in excess of the $260,000 pledged by Shapiro, and relied on a one-project corporation, the defendant cannot blithely contend that he can advance all payments to the general contractor and disregard any obligations to the plaintiff, especially when the plaintiff Concrete acted with good faith and reasonable diligence. *See generally Bigwood v. Merrimack Village Dist.*, 108 N.H. 83, 87, 229 A.2d 341, 344 (1967).

The plaintiff's mechanics lien on the leasehold of the defendant Cate should be removed. *See Westinghouse Electric Supply Co. v. Electromech Inc.*, 119 N.H. 833, 838, 409 A.2d 1141, 114° 4' (1979).

> *Affirmed in part; judgment for plaintiff Concrete Constructors, Inc., against Cate Enterprises, Inc., in the sum of $7,502 with interest and costs*

BATCHELDER, J., did not sit.